(No. 61061.—

CITIZENS UTILITIES COMPANY OF ILLINOIS, Appellee and Cross-Appellant, v. THE DEPARTMENT OF REVENUE, Appellant and Cross-Appellee.

*Opinion filed January 23, 1986.*

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant and cross-appellee Department of Revenue.

Earl T. Byron and Sheila L. Schlitter, of Chapman and Cutler, of Chicago, for appellee and cross-appellant Citizens Utility Company.

JUSTICE SIMON delivered the opinion of the court:

This appeal involves the application of the Illinois Income Tax Act (the Act) (Ill. Rev. Stat. 1981, ch. 120, par. 1—101 *et seq.*) to a subsidiary corporation whose parent corporation does business throughout the United States. More specifically, it raises the following questions: (1) whether the Act requires the taxpayer to file a

unitary business return using combined reporting; (2) if so, whether such a requirement violates the United States Constitution.

Citizens Utilities Company of Illinois, the taxpayer, is a wholly owned subsidiary of Citizens Utilities Company (the parent). The parent controls 24 similar corporations (which, along with the parent and the taxpayer, comprise the Citizens group), but the taxpayer is the only member of the Citizens group that operates in Illinois and in no other State. The taxpayer's business, supplying water and treating waste water, is regulated, and its charges are set by the Illinois Commerce Commission.

In April 1983 the Department of Revenue (the Department) issued a notice of deficiency covering the taxpayer's tax payments for 1978 through 1981. The taxpayer protested this finding, and a hearing officer concluded that it was required to file unitary returns for the years in question and that the deficiency was $235,731.

The taxpayer appealed this decision to the circuit court of Cook County. That court agreed that a unitary return was required, but it ruled that the Department was estopped from collecting the tax and refused to allow its assessment. The circuit judge concluded that it would be "unreasonable and inequitable" to apply the unitary method to the taxpayer's returns where the taxpayer had relied on the interpretation of the Department in its Income Tax Informational Bulletin (ITIB) 1975—1. We accepted the Department's direct appeal (87 Ill. 2d R. 302(b)), along with the plaintiff's cross-appeal.

The State argues that the circuit court incorrectly estopped the Department from collecting the deficiency determined to exist by the hearing officer. The taxpayer contends that the circuit court incorrectly determined that the Act's formula apportionment for unitary businesses (Ill. Rev. Stat. 1981, ch. 120, par. 3—304) applied.

to a public utility not engaged in transportation services. It also maintains that requiring such a return in its case would violate the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) because the taxpayer is not engaged in a unitary business.

Although the principles of income apportionment for State income taxation purposes are explained by this court's opinion in *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 368-72, we briefly reiterate them since familiarity with the methods of separate accounting and unitary business/formula apportionment as well as the principle of combined reporting is necessary to an understanding of the issues presented here.

Two schemes of income apportionment (separate accounting versus formula apportionment) are commonly employed to divide the income of a single taxpayer among multiple taxing States. "Separate accounting" is a geographically oriented method which is analytically suited to the case of a single taxable entity carrying on separate and distinct businesses in each taxing jurisdiction. In such cases apportionment is accomplished simply by reporting to each State the separate and identifiable earnings of the distinct business enterprises in the State. A more complex method is called for when the single entity carries on an integrated business in several States with the operation in each jurisdiction contributing to the income of all other operations through centralized management, accumulated know-how and economies of scale. Income earned by these types of businesses, commonly referred to as unitary businesses, cannot be accurately apportioned by use of separate accounting since that method does not take account of each operation's contribution to the income of the business as a whole; it is also subject to manipulation by shifting income to States with more favorable tax climates. (See generally Dexter, *The Unitary Concept in State Income Taxation*

*of Multistate-Multinational Businesses,* 10 Urb. Law. 181 (1978) (setting forth the history and theory of the unitary concept).) To more accurately apportion the income of unitary businesses, States have employed some type of "formula apportionment": the income of a unitary business is totaled, and a formula is applied to apportion that sum based on the ratio that the taxpayer's activities in the taxing State bear to the taxpayer's activities in all States.

When a unitary business is carried on by an associated group of corporate entities, commonly referred to as a "unitary business group," resort to formula apportionment is also in order; a group of assets is used by the same overall entity for the generation of income through operation of a single, unitary business. If corporate forms were respected, State income taxation would be as artificially limited and open to manipulation as is the method of separate accounting. To prevent the triumph of corporate formality over economic substance, "combined reporting" is a necessary tool. (*Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 440, 63 L. Ed. 2d 510, 523, 100 S. Ct. 1223, 1233 (unitary businesses should be taxed on the basis of economic activity not the form of investment).) Combined reporting works to expand application of the unitary-business concept so that an associated group of corporations can be treated as though it constituted a single taxpayer carrying on a unitary business. The total income of a unitary business as carried on by the associated group is determined by combining the income of each corporation involved in that business, and an apportioning ratio is then applied to that total for determination of the taxable income of the corporate member operating in the taxing State.

This case exemplifies the need for combined reporting. If, as the Department contends, the taxpayer is a

part of a unitary business group made up of the parent and all of its subsidiaries, simple application of the unitary-business/formula-apportionment method without combined reporting would result in a determination of taxable income fairly identical to that determined by the use of separate accounting since this particular corporate taxpayer operates solely within the State of Illinois. (See *Chase Brass & Copper Co. v. Franchise Tax Board* (1970), 10 Cal. App. 3d 496, 506, 87 Cal. Rptr. 239, 239 ("The formulary taxation procedure is not in itself a simultaneous process of taxing and of disregarding the separate entity of the taxed corporation").) Thus, for the Department to prevail, the court must conclude both that this taxpayer is subject to formula apportionment and that combined reporting is required in this case.

In determining whether the Act requires the taxpayer to apply formula apportionment as a unitary business group, an analysis of the background of the Act assists in understanding the meaning of the Act and determining the legislative intent. "In ascertaining the legislative intent, it is proper to consider the circumstances leading up to the adoption as well as the language used in the act ***." (*Follett's Book & Supply Store, Inc. v. Isaacs* (1963), 27 Ill. 2d 600, 604; see also *People ex rel. Nelson v. Olympic Hotel Building Corp.* (1950), 405 Ill. 440.) In August 1969, shortly after the effective date of the Act, the Department issued the "Official Commentary on the Illinois Income Tax Act." It discussed unitary taxation and noted that "[f]or the most part this is accomplished by embodying *** the principles of the Multistate Tax Compact ***." (1 Ill. Tax Rptr. (CCH), par. 18—006, at 1903; *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 117.) Therefore, the taxpayer contends, the manner in which the Multistate Tax Compact (MTC) provides for taxation of public utilities is relevant in determining whether the taxpayer is required to file a unitary return

under the Act.

Article IV of the MTC, which deals with unitary taxation, incorporated provisions of the Uniform Division of Income for Tax Purposes Act (UDITPA) (7A U.L.A.). Both the UDITPA and the MTC provide that a taxpayer who derives income from within and without the State, "other than activity as a financial organization or public utility ***, shall allocate and apportion his net income." (See UDITPA sec. 2; MTC art. IV, sec. 2; Ill. Rev. Stat. 1967, ch. 120, par. 871) Public utilities were thus specifically exempted by both codes from filing unitary returns.

The rationale for this exception was explained by the Committee on Tax Situs and Allocation of the 44th Annual Conference on Taxation of the National Tax Association, which preceded the adoption of the UDITPA and the MTC: "With respect to public utility activities (other than transportation and communication), it was found practically all of them are presently subject to strict state supervision entailing the use of separate accounting systems, which are regularly and carefully audited by the public service commissions of the various states." 44th Annual Conference on Taxation 459 (1951).

While the principles of the MTC are reflected in the Act, the latter does not duplicate the MTC in all respects. The MTC specifically exempts financial institutions, including insurance companies, and transportation services from the scheme of formula apportionment set forth in article IV of the MTC, but the Illinois act establishes specific apportionment formulae for insurance companies (Ill. Rev. Stat. 1981, ch. 120, par. 3—304(b)), financial institutions (Ill. Rev. Stat. 1981, ch. 120, par. 3—304(c)) and transportation services (Ill. Rev. Stat. 1981, ch. 120, par. 3—304(d)). Our General Assembly obviously declined to follow the advice of the Committee on Tax Situs and Allocation, which urged States not to apply an apportionment formula to these businesses be-

cause they, too, were highly regulated industries for which separate accounting provided an accurate basis for allocation. (44th Annual Conference on Taxation 459 (1950).) Section 304 is unambiguously drafted, and it provides for no exceptions to the presumed applicability of formula apportionment.

It is apparent, therefore, that while the official comments to the Act refer to adopting the "principles of the Multistate Tax Compact," they do not include among those principles the one urged by the taxpayer, namely, the income of highly regulated enterprises such as public utilities should be apportioned by means of separate accounting. From the context within which the comments refer to principles of the MTC, the reference seems to be to the promotion of interstate uniformity through application of the same apportioning formula under the Act as that used by the MTC to determine the ratio which activity in the taxing State bears to the activity of the unitary business in all States. (1 Ill. Tax Rptr. (CCH), par. 18—006, at 1903.) That formula, known as the three-factor formula and specifically adopted by section 304 of the Act, measures business activity using three factors: payroll, property and sales. While reliance on separate accounting to apportion the income of public utilities as provided for in the MTC might also promote uniformity, provisions of the Act requiring financial and insurance institutions to employ the unitary method indicate that the General Assembly was not preoccupied with interstate uniformity of accounting methods. We find no compelling reason to depart from the clear language of section 304 requiring formula apportionment for all unitary businesses, including public utilities.

The circuit court held that even if the Act provides for application of the three-factor apportionment scheme to the income of public utilities, the Department is estopped from collecting the deficiency herein assessed

on the basis of combined reporting. According to the taxpayer, ITIB 1975—1 set forth the Department's position regarding the use of combined reporting in the wake of the General Assembly's decision to withdraw from the MTC. Asserting that it reasonably relied on ITIB 1975—1 for the proposition that it could not file combined tax returns, the taxpayer claims that such reliance was detrimental because it did not seek rate increases from the Illinois Commerce Commission commensurate with the relatively greater tax burden which combined reporting would impose in this case. We need not, however, consider the estoppel issues on which the circuit court rested its conclusion since we find that the taxpayer could not have reasonably relied on ITIB 1975—1 for the proposition that the combined method of unitary accounting was no longer allowable under Illinois law.

In ITIB 1974—1, the Department proposed regulations under section 304 of the Act and article IV of the MTC providing for express authorization to use combined reporting. The bulletin stated:

> "The Department's (proposed) regulations under Article 3 of IITA and Article IV of the Multistate Tax Compact
> . expressly authorize use of the combination or combined method of apportionment *whereas heretofore authority for use of that method, inferable from the IITA and IIT Regulations provisions, existed as a Department position.*"
> (Emphasis added.)

(See also *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102 (authority to require combined reporting is implicit in the Act).) From that 1974 bulletin it is clear that the Department, anticipating this court's decision in *Lenckos*, found authority to require combined reporting implicit in the Act. Shortly after withdrawal from the MTC, however, the Department issued ITIB 1975—1, which stated:

"The provisions of [ITIB 1974—1] are hereby rescinded; combination, as a method of reporting unitary business income, is not authorized."

Although ITIB 1975—1 appeared to deny the Department's statutory authority to order combined reporting, the Department quickly retreated from the broad language of that bulletin. Eight days after ITIB 1975—1 was announced, the Department issued ITIB 1975—2 to "explain" technical changes in Illinois tax law. That bulletin makes clear that ITIB 1975—1 was issued "prematurely." This was fully explained by the following paragraph in *Caterpillar Tractor Co. v. Lenckos*:

"Finally, the intervenors' citation of a 1975 Illinois Tax Bulletin (ITIB 1975—1) as support for its argument that unitary reporting was proscribed upon repeal of the MTC is misleading. The 1975 bulletin is entitled: Withdrawal of Bulletin ITIB 1974—1 Relating to Combined Reporting for Unitary Business. The quotation from this 1975 bulletin, upon which the intervenors rely, is that 'combination, as a method of reporting unitary business income, is not authorized.' This 1975 bulletin was prematurely issued after the MTC was repealed and at a time when it was not known what changes in the Illinois Income Tax Act might follow. There were amendments passed in 1975, but they did not affect section 304 or any of the rules relating to allocation and apportionment, which, as we have observed above, allow the combined or unitary method of reporting. This was made clear in a second bulletin issued in 1975, ITIB 1975—2, which declared: 'Repeal of the Compact provisions has no substantive effect on current allocation and apportionment provisions of the Illinois Income Tax Act.' " 84 Ill. 2d 102, 125-26.

In view of ITIB 1975—2 alerting taxpayers to the continued vitality of the combined-reporting method recognized by ITIB 1974—1, the taxpayer could not have reasonably interpreted the Department's position as prohibiting the use of combined reporting under the Act.

Additionally, the record in this case belies the taxpayer's contention that it relied on ITIB 1975—1. Throughout this litigation, the taxpayer has maintained that it is not engaged in a unitary business with the remainder of the Citizens group, and with that conviction the taxpayer would not have attempted to file a combined return regardless of ITIB 1975—1.

For these reasons, the Department is not estopped from collecting the tax deficiency. Having determined that, but for an eight-day hiatus, the Department never denied its authority to order combined reporting, we need not consider the taxpayer's claim that the Department's retroactive change of position on this issue has worked a deprivation of due process.

Although the laws of Illinois provide for unitary taxation of public utilities on the basis of combined reporting, the taxpayer maintains that unitary taxation in this case is an unconstitutional tax on extraterritorial values. (See generally *F. W. Woolworth Co. v. Taxation and Revenue Department* (1982), 458 U.S. 354, 73 L. Ed. 2d 819, 102 S. Ct. 3128.) For taxation of income from interstate activities to withstand constitutional scrutiny there must in each case be some "minimal connection" between the taxing jurisdiction and those activities, as well as a "rational relationship" between the income attributed to the taxing jurisdiction and values generated by the taxpayer's business within that jurisdiction. (*Container Corporation of America v. Franchise Tax Board* (1983), 463 U.S. 159, 165-66, 77 L. Ed. 2d 545, 553, 103 S. Ct. 2933, 2940; *Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 436-37, 63 L. Ed. 2d 510, 520, 100 S. Ct. 1223, 1231.) The taxpayer, trying to skewer the Department's assessment on both prongs of the *Mobil Oil* test, raises two arguments: (1) that the hearing officer's finding of a unitary business group in this case is arbitrary and against the manifest weight of the evi-

dence, and (2) even if that finding is not against the manifest weight of the evidence, unitary taxation in this case results in taxation out of all appropriate proportion to the taxpayer's business conducted in this State.

Whether the taxpayer participated in a unitary business with the rest of the Citizens group is a question of fact for determination by the hearing officer. The Act provides for appeal of the hearing officer's decisions in accordance with the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 120, par. 12—1201; see Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*), but that law provides that the officer's conclusions finding the presence or absence of factors indicating a unitary business are "prima facie true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Our review on the narrow issue of whether the taxpayer is a member of a unitary business group is necessarily limited by the maxim that a determination by an administrative agency is "not to be disturbed upon review unless manifestly against the weight of the evidence." *Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 17.

To establish a "minimal connection" between the taxing State and extraterritorially reported income, and thereby justify unitary taxation, income reported by out-of-State group members must have been earned through a course of business conduct related to the intrastate activities performed by the taxpayer. (*ASARCO, Inc. v. Idaho State Tax Com.* (1982), 458 U.S. 307, 317, 73 L. Ed. 2d 787, 795, 102 S. Ct. 3103, 3109). "The functional meaning of this requirement is that there be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation" (*Container Corporation of America v. Franchise Tax Board* (1983), 463 U.S. 159,

166, 77 L. Ed. 2d 545, 554, 103 S. Ct. 2933, 2940.) Functional integration and economies of scale, as well as direct transfers of value, are all indicative of a unitary business since the contributions of each entity increase the taxable income of all the others.

The record shows the taxpayer and all other subsidiaries in the group to be wholly owned subsidiaries of the parent, and—with few exceptions—the parent and all its subsidiaries share the same officers as well as interlocking boards of directors. Although day-to-day management of the operating subsidiaries is controlled by local managers, the parent's headquarters in Connecticut (hereafter, headquarters) must specifically approve disbursements made by local managers over certain amounts. In the taxpayer's case, specific approval is required for all purchases exceeding $500. Headquarters also reviews major engineering projects and provides legal assistance in interpretation of State and Federal laws. Complex accounting functions, including preparation of the taxpayer's income tax returns, are also provided by the headquarters. All of these services are performed for the taxpayer, and the other subsidiaries, at cost: the parent charges only to recover labor and overhead costs associated with those services provided.

Revenues received by the taxpayer are deposited in a local bank and can be withdrawn by the parent at any time. When revenues are withdrawn by the parent, a debit is entered on the taxpayer's intercompany account. That account, carried as a liability by all the subsidiaries with a corresponding account on the parent's books, is the means by which the parent skims earnings from one subsidiary for investment in another. Such investments are made as interest-free loans routed through the intercompany account.

On the basis of these facts, we cannot say that finding the taxpayer to have been part of a unitary business

was against the manifest weight of the evidence. There exists the element of common ownership and control, but most telling is the constant flow of value among all members of the group. Using headquarters staff to provide services for all group members results in economies of scale: the taxpayer contributes to maintaining a pool of services from which its fellow subsidiaries obtain necessary services for less expense than would be incurred using outside providers and arm's length fee structures. Participation by the taxpayer is essential to the cost savings associated with economies of scale; without the taxpayer's contribution, the cost of maintaining this pool of services would be shared by fewer participants, whose savings would decline proportionately. Reduced expenditures occasioned by economies of scale increase the taxable income of group members, and the taxpayer thereby contributes through its Illinois activities to the generation of income reported in other States. This flow of value was sufficiently established by the hearing officer. In fact, the taxpayer's vice-president for operations testified that he held the same position in all operating members of the Citizens group because it was more cost efficient than employing separate individuals in those positions with each subsidiary.

The taxpayer responds to this analysis with the argument that the Department has authority to adjust intercorporate charges made by the parent for services performed. (Ill. Rev. Stat. 1981, ch. 120, par. 4—404.) That authority, it is claimed, provides the least drastic means for correcting the taxpayer's taxable income and avoiding possible imprecisions or manipulations. But this argument misses the mark; whether or not the taxpayer benefited through the provision of services by the parent is not the question. The relevant inquiry is whether operations conducted by individual corporations in the Citizens group contribute to income reported elsewhere by

other group subsidiaries. Adjusting intercorporate transfers between the taxpayer and its parent can neither unscramble the omelet nor establish a workable procedure through which separate accounting, if used, could quantify immeasurable flows of value within a unitary business group.

Finally, and perhaps most illuminating, is the parent's use of the intercompany account. As previously noted, the account gives the parent access to revenues received by all its subsidiaries. The parent can withdraw revenues from one subsidiary and invest them in the form of an interest-free loan with another subsidiary. Both the borrowing and lending corporations are governed by the same directors, officers and management strategies, so the lender controls how the loan is used and the investment cannot be considered passive within the meaning of *Container Corporation*. By these transfers, the revenue producing subsidiary loses income from the time-value of its revenues, and the borrowing subsidiary's income is increased by eliminating interest expenses. This flow of value is, in itself, strongly indicative of a unitary business. *In re Automated Building Components, Inc.* (Cal. Bd. of Equal. June 22, 1976); *cf. Container Corporation of America v. Franchise Tax Board* (1983), 463 U.S. 159, 178, 77 L. Ed. 2d 545, 561, 103 S. Ct. 2933, 2947 ("When a corporation invests in a subsidiary that engages in the same line of work as itself, it becomes much more likely that one function of the investment is to make better use—either through economies of scale or through operational integration or sharing of expertise—of the parent's existing business-related resources").

The taxpayer responds that the conduct of its business does not meet the Department's own definition of a unitary business as set forth in the regulations. Regulation section 300—2(c)(1)(C) requires both central management authority and use of that authority in centralized

operations for a finding of strong centralized management. Although the parent's reports to shareholders admit to "centralized administrative control, policy determination, long-range planning, [and] finance," the taxpayer contends that there is no evidence to support a finding that the parent exercised its authority to create and control centralized operations. Contrary to this assertion, we find adequate support in the record for the conclusion that the parent corporation enjoyed actual, centralized control over the Citizen's group. All financial resources were controlled, and major acquisitions approved, by the parent corporation. Moreover, contracts entered into by the subsidiaries were often signed by officers of those subsidiaries—who also acted as officers of the parent—not just the local managers. But in any event, a finding of strongly centralized management is not an indispensable factor for identifying unitary businesses; section 300—2(c)(1)(C) places a premium on that factor only "to justify a conclusion that the operations of otherwise *seemingly separate trades or businesses*" form a unitary business. (Emphasis added.)

This case falls within section 300—2(c)(1)(A): "A trade or business carried on by more than one person is unitary in nature when all of the activities of the persons are in the same general line." Regardless of the local conditions within which Citizens group members operate, they are all engaged in the business of supplying various public utility services. Rather than diversify operations across a variety of industries, the Citizens group strategy, as explained in its reports to shareholders, is to diversify across geographical boundaries as protection against local market and regulatory adversities. Clearly, the entire group performs business activities "in the same general line."

Upon reviewing the record, we fail to find substance in the taxpayer's contention that the finding of a unitary

business in this case is arbitrary and against the manifest weight of the evidence; nor do we agree that the Department has ignored its own regulations in making its determination.

Regarding the second component of the *Mobil Oil* test, that the deficient tax is out of all appropriate proportion to the values generated through business conducted within the taxing jurisdiction, the taxpayer bears a heavy burden to establish by "clear and cogent evidence" that an applied method of apportionment results in taxation of extraterritorial values. (*Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 221, 65 L. Ed. 2d 66, 80, 100 S. Ct. 2109, 2119; *Butler Brothers v. McColgan* (1942), 315 U.S. 501, 507, 86 L. Ed. 991, 996, 62 S. Ct. 701, 704.) In the absence of such evidence, the three-factor formula employed by the Act and noted above (payroll, property and sales) is a presumptively proper method of apportionment; that formula supplies the "benchmark" for a fair and consistent apportionment formula. *Container Corporation of America v. Franchise Tax Board* (1983), 463 U.S. 159, 169-70, 77 L. Ed. 2d 545, 556, 103 S. Ct. 2933, 2943.

The taxpayer claims to have established the unconstitutionality of formula apportionment in this case with its observation that use of formula apportionment with combined reporting increases its tax liability for the years in question 213% over the amount determined by use of separate accounting, and separate accounting, it is argued, fairly and accurately represents the extent of the taxpayer's business activity in Illinois. But whether or not separate accounting gives a fair depiction of business activity in Illinois is not the relevant question. The relevant inquiry is whether the taxpayer's business activity in Illinois contributes to income reported by the parent or its other subsidiaries, and that question is answered by determining whether or not the taxpayer is engaged

in a unitary business. If so, separate accounting will not satisfy the State's legitimate quest for tax revenues attributable to activity conducted within its frontiers, and formula apportionment is properly applied to find a constitutionally acceptable approximation of income properly attributable to Illinois. *Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 223, 65 L. Ed. 2d 66, 81, 100 S. Ct. 2109, 2120.

It proves nothing to say that a 213% increase of tax liability results by application of unitary taxation rather than separate accounting. Since the taxpayer was engaged in a unitary business with the Citizens group it is most likely that the 213% spread is caused by unrepresentative income figures calculated using separate accounting. Furthermore, we do not read *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell* (1931), 283 U.S. 123, 75 L. Ed. 879, 51 S. Ct. 385, for the proposition (as urged by the taxpayer) that a 213% increase in tax liability is unconstitutionally excessive and indicative of an ill-suited application of formula apportionment. In this regard we note that *Butler Brothers* upheld application of formula apportionment where the increase in tax liability over that determined under separate accounting exceeded 15,000%. *Hans Rees'* struck down apportionment by a single-factor formula in that case because the taxpayer had introduced evidence specifically relevant to that case showing that the formula arbitrarily taxed income earned outside the taxing State with the result that the tax assessed did not represent an apportionment which could pass constitutional muster. This the taxpayer before us has not done, apart from setting forth the 213% figure; bare percentages without explanation are not helpful to a determination of the issues at hand. The taxpayer has not discharged its burden of showing why application of the three-factor formula to its unitary business yields a distorted result, and we can-

not say from the record before us that the determined deficiency is out of all appropriate proportion to the values generated by the taxpayer's intrastate activities or that the hearing officer's finding was against the manifest weight of the evidence.

For these reasons, we reverse the judgment of the circuit court estopping the Department from collecting the deficiency determined using combined reporting, and we confirm the deficiency assessment based on the finding that the taxpayer was engaged in a unitary business subject to formula apportionment in this case.

*Circuit court reversed;*
*assessment confirmed.*