S.B. LEXINGTON, INC., Plaintiff-Appellant, v. NEAR NORTH INSURANCE AGENCY, INC., Defendant-Appellee.

First District (5th Division)   Nos. 1—91—0712, 1—91—1147 cons.

Opinion filed March 26, 1993.

Hopkins & Sutter, of Chicago (John F. Zabriskie, of counsel), for appellant.

Katten, Muchin & Zavis, of Chicago (James E. Hanlon, Jr., of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff-appellant S.B. Lexington, Inc. (Lexington), appeals the trial court's judgment rendered against it in a breach of contract action brought against defendant, Near North Insurance Agency (Near North), to recover the balance of a fee Near North agreed to pay as consideration for the referral of a potential insurance client.

On March 15, 1990, a trial judge denied both parties' cross-motions for summary judgment but found that the alleged contract did not violate the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 613 *et seq.*). A different trial judge was assigned to preside at trial.

On January 24, 1991, the second trial judge vacated the initial trial judge's determination and on January 28, 1991, following a trial, found that Bernstein, and not Lexington, was the finder of the Rosenow Roofing account, that a contract existed, that Ted Bernstein was not properly licensed, and as a consequence, the contract was void because it violated provisions of the Illinois Insurance Code.

The issues presented for review are (1) whether the trial court erred in finding that the agreement was in contravention of section 507.1 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1985, ch. 73, par. 1065.54—1) and was thereby unenforceable, (2) whether compensation may be paid to a registered insurance firm for services where the representative who performed the services was not licensed, and (3) whether Lexington was a properly registered firm.

We reverse and remand.

BACKGROUND

Lexington is an insurance brokerage company licensed by and registered with the State of Illinois. Lexington sells, among many other types of insurance, liability, property, and casualty insurance. Lexington is presently owned by Simon Bernstein. During the time relevant to these appeals, Lexington's president, Richard Klink, was properly licensed to sell property and casualty insurance in Illinois.

Ted Bernstein (Bernstein) is Simon Bernstein's son. He is licensed to sell life, accident, and health insurance. Bernstein has had a long-standing relationship with Lexington. From 1978 through 1980, Bernstein was a representative of Lexington. After that, he started his own firm, Tax Perks, which shared office space with Lexington. In 1984 or 1985, Bernstein started another company, Assured Enterprises, which currently shares offices with Lexington. Bernstein's firms continue to broker business through Lexington.

Near North is a general insurance brokerage firm that deals in all types of commercial and personal insurance, and acts as broker and agent for various insurance companies on a nationwide basis. Its president is Michael Segal, who has held that position for almost two decades. Mr. Segal is an attorney and a certified public accountant.

Bernstein sold life insurance to Rosenow Roofing. Mr. Rosenow of Rosenow Roofing told Bernstein that his company was in need of property and casualty insurance because its coverage was going to expire. Rosenow asked Bernstein to assist him in finding replacement property and casualty insurance. Thereafter, Bernstein called a business associate who suggested that he call Nick Melas of Near North.

Bernstein called Melas, told him that he was trying to assist his client, and explained Rosenow Roofing's situation. Melas told Bernstein that he could assist Rosenow Roofing. Bernstein gathered some data and arranged a meeting between the parties. Before meeting, Bernstein gave Tom Magner of Near North some information about the Rosenow Roofing account. Melas was unavailable.

The initial meeting was attended by Bernstein, Magner, two Rosenows, Rosenows' attorney, and possibly Rosenows' certified public accountant and/or comptroller. At this meeting, Bernstein made introductions, stated the meeting's purpose, and left before its conclusion.

Magner scheduled and attended additional meetings with Rosenow Roofing personnel in which Bernstein did not participate. Magner made a proposal to Rosenow Roofing regarding property and casualty insurance coverage which Rosenow Roofing accepted.

Rosenow Roofing maintained coverage under policies brokered by Near North for one year during which Rosenow Roofing paid $815,895 in premiums. Near North earned $92,770.80 in commissions.

In trying to ascertain the amount of compensation that Lexington was to receive, Magner arranged a meeting between Segal and Bernstein. The meeting occurred in October 1985 at Near North's office.

During this meeting, Bernstein testified that Segal told him that Near North would pay Lexington a fee equal to 45% of the first year's commissions on the Rosenow Roofing account. Bernstein agreed and told Segal that Lexington would send a letter confirming their agreement.

Shortly thereafter, Bernstein notified Lexington's president, Richard Klink, that, on Lexington's behalf, he had accepted as compensation 45% of the first year's commission. Klink confirmed the agreement by sending a letter to Segal dated October 7, 1985:

"Dear Mr. Segal:

Enclosed is [sic] copy of registration of S.B. Lexington, Inc. as an insurance firm.

One of our representatives, Mr. Ted S. Bernstein, has placed a case (Hans Rosenow Roofing Company) with your firm.

The commissions on this case (45% to 50% of the total) should be paid to S.B. Lexington, Inc. as well as all commissions on cases placed with your firm in the future by Mr. Bernstein \*\*\*."

According to Magner, Segal met with Magner and discussed the terms of Lexington's fees and instructed him to write a confirmation letter.

In early November, 1985, Magner drafted a letter to Bernstein:

"Dear Ted:

I am writing this letter to confirm our various conversations regarding commissions payable to your firm.

Mr. Michael Segal had indicated to you that you would be receiving 50% of the gross commissions developed on the Hans Rosenow Roofing Company account. Actually, the percentage was something less than 50% (45%) since Michael was setting aside a share for me. You had accepted this, so from a practical standpoint, 45% of the gross commissions on the Hans Rosenow Roofing account will be paid to your firm\*\*\*."

The draft further provided that, because Rosenow Roofing paid its premiums in installments, Lexington would receive its fee in installments. The draft letter instructed Bernstein to contact the head of Near North's accounting department to make payment arrangements.

Magner testified that the draft was approved by Near North's executive vice-president after he made minor changes. This letter was sent to Bernstein.

Near North failed to pay Lexington. A Lexington assistant requested that Watkins, of Near North's accounting department, pay Lexington 45% of commissions received by Near North with respect to the Rosenow Roofing account. Watkins drafted a memo:

"December 12, 1985
TO:     MIKE SEGAL
FROM:   DAN WATKINS
RE:     Hans Rosenow Roofing Co., Inc.

Ted Bernstein of S.B. Lexington (a Sub-Broker) has called requesting his commission check. It is my understanding a 45% commission rate should be paid.

Attached are the Accounts Receivables for Hans Rosenow Roofing Co. Invoices which have been paid in full are highlighted and I based his commission split on 45% of $17,028.80 (Total Commission). Commission due Bernstein is $7,662.96.

O.K. to issue the check? ____ YES ____ NO."

The "yes" blank was marked. Watkins then dispatched a check for $7,662.96 payable to Lexington.

Segal contradicts the above version. Segal testified that he had a meeting with Bernstein regarding a fee but that they did not reach an agreement. Segal contended that as Near North did all the work, no one had done enough to be considered a broker and the $7,662.96 check was considered a finder's fee.

Lexington filed its original complaint with the chancery division on June 26, 1986. On November 6, 1986, upon motion of Near North, the case was reassigned to the law division. Near North filed its answer and affirmative defenses.

More than three years later, this case was set to be assigned out for trial on December 8, 1989. Near North filed a motion for summary judgment claiming that the contract between it and Lexington was illegal under the Illinois Insurance Code. The assignment judge ruled that the motion would be ruled upon by the judge to whom the case was to be assigned. The matter was continued to March 27, 1990.

However, on January 24, 1990, Near North brought an emergency motion to have its summary judgment motion determined before the March 27, 1990, trial date. Near North's summary judgment motion and Lexington's cross-motion for summary judgment were assigned to Judge Edwin M. Berman, who denied both motions, but with respect to Near North's Code defense, ordered:

"Pursuant to Section 2—1005(d) of the Illinois Code of Civil Procedure, this Court determines that there is no genuine dispute of fact, and as a matter of law the Illinois Insurance Code does not bar payment by Near North to S.B. Lexington, which payment is alleged in S.B. Lexington's Complaint."

The case was returned to the assignment judge, who ultimately assigned it to Judge Edward G. Finnegan.

Both parties moved that Judge Finnegan reconsider the portions of Judge Berman's March 15, 1990, order adverse to their respective interests. Judge Finnegan denied both motions and vacated the previous trial court's section 2—1005(d) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(d)) determination. The matter proceeded to trial.

The trial court thereupon ruled that (1) Mr. Bernstein, and not S.B. Lexington, was the finder of the Hans Rosenow Roofing account, (2) that Bernstein/Lexington did have an agreement with defendant Near North that it would be paid 45% of the commission paid on the Rosenow Roofing account, (3) that Bernstein was not licensed as a broker for property and casualty insurance, and (4) that as the agreement was in contravention of the Illinois Insurance Code, sections 507.1 and 499.1, the agreement was unenforceable.

Appeal was taken from this order.

Opinion

I

Lexington contends that the trial court erred in finding that the agreement was in contravention of section 507.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1065.54—1) and was thereby unenforceable.

The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the legislature's intent, and in construing such a statute, the court must assume that the legislature did not intend an absurd result. *Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341, 504 N.E.2d 84.

When interpreting a statute, courts must give the language of that statute its plain and ordinary meaning, looking first to the statutory language. *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 50-51, 563 N.E.2d 465.

When terms of a statute are not specifically defined, the words must be given their ordinary and popularly understood meanings. *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937.

Section 507.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1065.54—1) provides:

> "*No insurance company,* insurance producer, limited insurance representative or registered firm *shall pay,* directly or indirectly, *any commission, service fee,* brokerage or other valuable consideration *to any person for services as an insurance producer,* temporary insurance producer or limited insurance representative, or for such services by the person's members, officers, directors or employees, *unless the person,* and any member, officer, director or employee performing such service *held a valid license regarding the class of insurance* as to which such service was rendered, *or unless the person was a*

*properly registered firm* at the time such service was performed. No person, other than a person properly licensed or registered in accordance with this Article at the time he performs services as an insurance producer, temporary insurance producer or limited insurance representative shall accept any commission, service fee, brokerage or other valuable consideration for such services. This Section shall not prevent payment or receipt of renewal or other deferred commissions to or by any person entitled thereto under this Section." (Emphasis added.)

The trial court found that the contract was void because it violated provisions of the Illinois Insurance Code. Whether or not the trial court correctly interpreted and applied sections 507.1 and 499.1 is a question of law.

Reviewing courts determine questions of law *de novo* and give no deference to the trial court's ruling. *South Suburban Safeway Lines, Inc. v. Regional Transportation Authority* (1988), 166 Ill. App. 3d 361, 365, 519 N.E.2d 1005.

■ The key words in the Code relative to the case at bar are set forth in the phrase "services as an insurance producer." While this phrase is not defined, section 491.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1065.38—1(b)) defines "insurance producer" as:

"an individual who solicits, negotiates, effects, procures, renews, continues or binds policies of insurance covering property or risks located in Illinois."

The definition of "solicit" is to approach, to make petition to, to move to action, or to strongly urge. (Webster's Third New International Dictionary 2169 (1986).) According to the definition, Bernstein, through Lexington, cannot be said to have solicited because the facts state that Rosenow Roofing contacted Bernstein for assistance in obtaining insurance. Thereafter, Bernstein called Near North, scheduled a meeting between Rosenow Roofing and Near North, went to the meeting, made introductions, stated the meeting's purpose, and left the meeting before its conclusion. Therefore, Bernstein did not solicit.

"Negotiate" is defined as to communicate and confer with another so as to arrive through discussion at some agreement or compromise. (Webster's Third New International Dictionary 1514 (1986).) The facts indicate that Bernstein did not discuss any particulars so as to arrive at some agreement or compromise. Therefore, Bernstein did not negotiate.

"Effect" is defined as to bring about a result. (Webster's Third New International Dictionary 724 (1986).) We submit that the effect contemplated by insurance law is to bring about insurance. Near North contends that Bernstein was an insurance producer. However, the facts in the case at bar do not indicate that Bernstein brought about insurance. The insurance was brought about by Near North. The facts indicate that Bernstein introduced the broker (Near North) to the purchaser (Rosenow Roofing).

"Procure" is defined as to cause to happen, to bring something about. (Webster's Third New International Dictionary 1809 (1986).) The same facts indicate that the insurance was procured by the broker, Near North.

Bernstein did not renew (reestablish), continue (maintain without interruption), or bind (constrain with legal authority) any insurance policies regarding Rosenow Roofing and Near North. Webster's Third New International Dictionary 1922, 493, 217 (1986).

The evidence establishes that Bernstein did not offer any substantive advice about the Rosenow Roofing account to Near North. We note that Near North's president, Segal, testified that he did not consider Bernstein to be a broker because Bernstein did not fill out applications, assemble underwriting submissions consisting of a lot of data, engineer reports, and ultimately sell the particular program to the prospective insured. Moreover, Segal testified that the check which was submitted to Lexington was not coded as being a broker's commission or compensation. He testified that the check was a finder's fee which was not in contravention of the Code. This testimony is in contradiction to Near North's position that Bernstein was acting as an insurance producer.

Further, the fact that Segal considered the compensation that Lexington received from Near North as being a finder's fee is consistent with the notion that Bernstein's actions constituted a referral. A "referral" is the process of directing or redirecting to an appropriate specialist or agency. Webster's Third New International Dictionary 1908 (1986).

We note that the Chief Counsel of the Illinois Department of Insurance, in connection with motions to reconsider, represented, in an affidavit, that:

> "[w]here no substantive advice about any policy of insurance is offered to the consumer by a referring party and the referral is not part of a plan or practice of steering consumers generally to a particular insurance agency or product, it is the Department's position that no 'services as an insurance producer' has

[*sic*] taken place within the meaning of that phrase as used in Section 507.1 of the Illinois Insurance Code. ***

In those circumstances therefore, it is the Department's position that Section 507.1 of the Illinois Insurance Code does not bar the payment of a referral fee by the agency to the referring party or to the entity on whose behalf the referring party acted."

The interpretation placed on a statute by the agency charged with its administration and enforcement, while not binding, is generally accorded deference. *City of Burbank v. Illinois State Labor Relations Board* (1989), 128 Ill. 2d 335, 345, 538 N.E.2d 1146.

We agree with the opinion of the Chief Counsel of Insurance. The evidence established that Bernstein did not offer any substantial advice about any insurance policy to any consumer. Nor did the evidence establish a particular "plan or practice of steering" customers to Near North.

Further, the definition of "insurance producer" does not include the word "refer." A person who makes a referral, as such, is not an insurance producer. It is not the province of the courts to inject provisions not found in a statute. *In re Objection of Cook to Referendum Petition of Pierce* (1984), 122 Ill. App. 3d 1068, 1072, 462 N.E.2d 557.

Bernstein, therefore, was not an insurance producer and the trial court erred in finding that the agreement between Lexington and Near North was in contravention of section 507.1 of the Illinois Insurance Code.

## II

Lexington contends that even if Bernstein were considered to be an insurance producer, compensation may be paid to a registered insurance firm for services where the representative who performed the services was not licensed. We agree.

"No insurance company *** shall pay *** any commission, service fee *** to any person for services as an insurance producer *** unless the person *** held a valid license regarding the class *** or unless the person was a properly registered firm ***." Ill. Rev. Stat. 1985, ch. 73, par. 1065.54—1.

■ Section 507.1 expressly provides for the payment of a fee to "a properly registered firm at the time such service was performed." (Ill. Rev. Stat. 1985, ch. 73, par. 1065.54—1.) Bernstein admits that he was not licensed to sell property and casualty insurance. However,

Richard Klink, Lexington's president, was so licensed. The parties stipulated to this matter in joint exhibit 2:

"Near North Insurance Agency admits, for purposes of this trial, that Richard Karl Klink was licensed to sell both property and casualty insurance in the State of Illinois in 1985 ***.

Near North Insurance Agency admits, for purposes of this trial, that S.B. Lexington, Inc. was registered as an insurance agency in the State of Illinois in 1985."

Therefore, Lexington was a registered firm at the time services were rendered and compensation may be paid.

### III

Near North contends that Lexington was not a properly registered firm. We disagree.

Section 499.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1065.46—1) provides:

"(a) Each firm required to register before acting as a registered firm pursuant to this Article shall appoint one or more licensed insurance producers to be responsible for the firm's compliance with the insurance laws and Title 50 of the Illinois Administrative Code. Such individual or individuals shall submit to the Director a registration form and the fees required by Section 509.1. The Director shall prescribe the registration form and may require any documents reasonably necessary to verify the information contained in the registration form.

(b) The registered firm shall inform the Director in writing of a change in its business address within 30 days of such change.

(c) Each registered firm shall disclose its members, officers or directors who are authorized to act as insurance producers, and report any changes in such personnel to the Director within 30 days of such changes."

Near North contends that Lexington was improperly registered because Lexington did not comply with section 499.1(c) because it neglected to update the list of insurance producers submitted to the Director of Insurance to include Bernstein.

Section 499.1(a) requires that firms appoint at least one licensed insurance producer to be responsible for the firm's compliance with the insurance laws. As noted above, this requirement was satisfied.

Section 499.1(c) requires that each registered firm disclose its members who are authorized to act as insurance producers and to report any personnel changes within 30 days of such changes.

■ Lexington did not comply with subsection (c) because it did not report a change in its personnel. However, the applicable statute does not list any penalties (for example: invalidation of a firm's otherwise proper registration) for failure to comply with this reporting requirement. Further, the meaning of the 1985 Code has been made crystal clear by a subsequent amendment to the statute. Section 499.1(a) of the Illinois Insurance Code (Ill. Rev. Stat. 1991, ch. 73, par. 1065.46—1(a)), in pertinent part, provides:

"Such registration shall remain in effect as long as the firm pays the annual fee required by Section 509.1 of this Code *** by the date due, *unless the registration is revoked or suspended* pursuant to Section 505.1 of this Code." (Emphasis added.)

It is our view that a firm is properly registered whether or not it discloses its officers (section 499.1(c)) or reports changes in location (section 499.1(b)). A firm is properly registered when it has complied with registration laws, the payment of fees, and has incurred no revocation or suspension.

For the foregoing reasons, we reverse and remand.

Reversed and remanded.

McNULTY and TULLY, JJ., concur.