VERMILION COUNTY MUSEUM SOCIETY, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 4—94—0996

Opinion filed July 17, 1995.

McCULLOUGH, J., dissenting.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of counsel), for appellant.

Everett L. Laury, of Hutton, Laury, Hesser, Lietz & Wilcox, of Danville, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Vermilion County Museum Society (Society), an Illinois not-for-profit corporation, sought a real estate tax exemption for a parking lot area adjoining the Society's historical Fithian House (built in the 1850's and now used as a museum). In August 1991, the Vermilion County Board of Review (Board of Review) recommended approval of the exemption, but review by the Illinois Department of Revenue (Department) resulted in a denial in March 1993. In April 1993, the Society appealed the decision of the Department to the circuit court of Vermilion County. That court reversed and ordered the exemption. The Department appeals.

The Department contends that the property in question was not charitable property because the Society failed to meet four of six criteria as set forth by the Supreme Court of Illinois in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E. 2d 537.

We first address an issue that has vaguely been suggested by the Department. This case arose when the Society sought an exemption status for the parking lot based upon section 19.16 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1991, ch. 120, par. 500.16 (now recodified as amended in section 15—125 of the Property Tax Code (Code) (35 ILCS 200/15—125 (West 1994)) (parking areas for exempt institutions)). The museum property had been removed from tax rolls sev-

eral years earlier. Whether the Department was involved as required by section 108(6) of the Act (Ill. Rev. Stat. 1991, ch. 120, par. 589(6) (now recodified as amended in section 16—70 of the Code (35 ILCS 200/16—70 (West 1994))) has not been established, though the Department claims it was not so involved.

■ This question was not originally listed as an issue on appeal, but has now been suggested. Evidently, the Board of Review was involved in the earlier removal from the tax rolls, as required by section 108(6) of the Act. This section requires the Board of Review to determine the application for exemption and, then, to have its clerks forward "a full and complete statement of all the facts" to the Department and "[t]he Department shall then determine whether such property is or is not legally liable to taxation." (Ill. Rev. Stat. 1991, ch. 120, par. 589(6).) It would appear that any fault for not forwarding the matter to the Department, or the Department's subsequent failure to act, would not be the responsibility of the real estate owner. We have determined that the issue of propriety for exemption of real estate where the Fithian House is located is not before us.

In making this determination, we are at a loss to find a way to remove a property from taxable status, at the county level, without the involvement of the Board of Review. Considering the effect of the Board of Review's action, without review by the Department, we turn to section 108(6) of the Act, which states:

> "The board of review shall hear and *determine* the application ***. *** [T]he decision of the board shall not be final ***. *** The Department shall then determine whether such property is or is not legally liable to taxation. It shall notify the board of review of its decision, and the board *shall correct the assessment* accordingly, if necessary." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 120, par. 589(6).)

Review provisions for the Department decisions are then set forth and a provision prohibiting delay of extension of taxes is provided. We conclude, absent any authority to the contrary, that the Board of Review determination is effective until the Department determines the Board of Review was in error and "corrects the assessment." The tax exempt status, once determined by the Board of Review, is in effect until corrected. This case involves the parking lot. There has not been a prior Department determination which "corrects the assessment" of the Society's museum. Exemption relating to the parking lot should not be prohibited because of a nonexistent Department order. Parking lots for charitable exempt property are also subject to exempt status. Ill. Rev. Stat. 1991, ch. 120, par. 500.16.

However, in claiming the parking lot should not be exempt, the Department argues the Society, an Illinois not-for-profit corporation, does not qualify as a "charitable institution" under section 19.16 of the Act. In the interest of judicial economy, we address this issue. The Department agrees that a parking lot for the use of a "charitable institution" is property exempted. (See *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 313, 490 N.E.2d 161, 164.) The Department also agrees that museums used for the public learning can be considered "charitable institutions."

Both the Society and the Department agree that the standard of review is *de novo* (*S.B. Lexington, Inc. v. Near North Insurance Agency, Inc.* (1993), 244 Ill. App. 3d 1023, 1030, 614 N.E.2d 234, 238), and that the Society has the burden of proving the charitable exemption status (*Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1074).

■ In *Decatur Sports Foundation v. Department of Revenue* (1988), 177 Ill. App. 3d 696, 708, 532 N.E.2d 576, 585, our court set forth the *Korzen* criteria as follows:

> "These characteristics have evolved into the following test: (1) the benefits derived are for an indefinite number of persons; (2) the organization has no capital, capital stock or shareholders, and does not profit from the enterprise; (3) funds are derived mainly from private and public charity, and the funds are held in trust for the objects and purposes expressed in the charter; (4) the charity is dispensed to all who need and apply for it; (5) no obstacles appear to be placed in the way of those seeking the benefits; and (6) the exclusive (primary) use of the property is for charitable purposes."

The Department contends the Society did not meet the tests of criteria Nos. 1, 4, 5, and 6.

■ We have considered the relevant facts. Plaintiff's main purpose is to maintain, for public museum purposes, the historic Fithian House and a couple of other historically interesting buildings. A newsletter or magazine containing historical facts is circulated quarterly. Money to maintain the properties and display them is raised in three basic ways: (1) general contributions, (2) admission fees of $1 for adults and 50 cents for children, and (3) membership fees (to slightly more than 1,000 people) of a minimum of $10. Fees were also charged to all persons participating in a Christmas walk program. There evidently was no provision for waiver or reduction of the annual membership dues or the admission fee. It appears the membership benefits are limited to the quarterly publication and free admittance.

Irrespective of the fact that an admission fee is charged, it is acknowledged that school children come to the museum by bus and enter without cost. The parking lot will provide parking for the school buses, as well as for others who visit and work in the museum home. Many workers are volunteers.

A museum established to educate the public qualifies as a charitable institution (see *Mason v. Bloomington Library Association* (1908), 237 Ill. 442, 449, 86 N.E. 1044, 1047), but the dictates of *Korzen* are still a condition precedent to exemption. We consider the study of history to be educational, thus qualifying the purpose of the Society as a charitable institution. Therefore, we now turn to criteria Nos. 1, 4, 5, and 6.

Are the benefits of the Society derived for an indefinite number of persons? The Department says no, because only those with paid memberships receive the quarterly publication and some individuals could be prevented admittance because a fee is charged.

We first address the daily ($1 for adults or 50 cents for children) admission fees. There is no indication of unlawful discrimination when considering admission, and we find the admission fee to be insignificant. Generally, an organization charging fees does not lose its charitable character if no profit is made, any amounts collected are applied toward the charitable purposes, and those unable to pay are admitted. (See *Congregational Sunday School & Publishing Society v. Board of Review* (1919), 290 Ill. 108, 113, 125 N.E. 7, 10.) The admission fee evidence clearly indicates that the fees are only a small portion of the overall cost of maintaining and exhibiting the Society's museum. We find the admission cost to be an insignificant hinderance to admission to the museum. The admittance income is applied to the costs of operation.

The $10 membership fee is another matter. The Department, in emphasizing this issue, fails to acknowledge the limited value to members and the substantial value to the Society and the public. What better way to achieve a list of *major* contributors than this type of list? It appears the quarterly publication most likely encourages contributions well above the nominal $10-per-year charge. There is no indication that the quarterly publication makes a profit, but we recognize it encourages interest in the Society, resulting in the necessary sizable contributions needed to provide funding. We find the Society benefits both by the membership provision and the quarterly publication. These two items assist in providing funds allowing a $1 minimal admission fee. Charging a minimal fee should not necessarily remove the categorization of a charitable institution. *Small v. Pangle* (1975), 60 Ill. 2d 510, 517, 328 N.E.2d 285, 289.

We conclude that the significant function of the Society is to provide a historical museum and that the amount of the fee allows admission to all interested persons. The record requires a finding that the use of the Society property is for charitable purposes.

The circuit court of Vermilion County is affirmed.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

The parties and the majority discuss the charitable exemption status of Fithian House. The majority suggests that it has not been established that the Department has or has not approved the building as tax exempt. Pursuant to section 108(6) of the Act, it was the duty of the Board of Review to first determine whether property should be exempt from taxation. The parties agree this was done. The Act then requires the clerk of the Board of Review "to make out and forward to the Department, a full and complete statement of all the facts in the case. The Department shall then determine whether such property is or is not legally liable to taxation. It shall notify the board of review of its decision, and the board shall correct the assessment accordingly ***." (Ill. Rev. Stat. 1991, ch. 120, par. 589(6).) As stated, this was not done and Fithian House has not been granted exempt status.

Where the parking lot is located on a separate parcel, section 19.16 of the Act requires that in order for the parking lot to be exempt, the organization or individual seeking the exemption for the parking lot must have a charitable exemption for the property served by the parking lot. The use of the subject parcel as a parking lot is ancillary to the use of the adjacent property. (Ill. Rev. Stat. 1991, ch. 120, par. 500.16.) The property owner who seeks tax exempt status must follow the requirements of the Act. The owner cannot plead ignorance of the law, nor can it evade its responsibility by not following the statute in conformity with the Illinois Constitution.

Although the parties contest the charitable nature of the Society, there is no need to address that question as it relates more appropriately to whether the museum property should be exempt from taxation, an issue which is not involved in this case.

Because the Society house building (Fithian House) does not have an approved exemption, the exemption for the parking lot must fall. I reiterate, this case does not concern taxation of the building. I do suggest the Society has a responsibility to pursue tax exempt

status for Fithian House, as required by the statute, if that is its desire.

The majority also suggests that the parties agree that the standard of review is *de novo*. I agree the review of the decision of the trial court is *de novo*. However, this court does not have the prerogative to reweigh the evidence and the Department's decision is not to be reversed unless the decision is against the manifest weight of the evidence. 735 ILCS 5/3—110 (West 1992); *Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32, 47, 488 N.E.2d 984, 990.