SIXTH DIVISION

September 29, 2000

No.1-99-1319

HORMEL FOODS CORPORATION AND JENNIE-O- ) Appeal from the

FOODS, INC., ) Circuit Court of

) Cook County

Plaintiffs-Appellants, )

)

v. ) No. 98 L 50151

)

KENNETH E. ZEHNDER, Director of the )

Department of Revenue, and THE DEPART- )

MENT OF REVENUE, ) The Honorable

) 
Joanne L. Lanigan
,

Defendants-Appellees. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs Hormel Foods Corporation and one of its subsidi-

aries, Jennie-O Foods, Inc. (collectively Taxpayers), appeal an order of the circuit court affirming a decision of the Director of the Illinois Department of Revenue (Director).  The Director found that, for purposes of the Illinois Income Tax Act (Tax Act) (Ill. Rev. Stat. 1981, ch 120, par. 1-101 
et  seq.
 (now 35 ILCS 5/101 
et seq.
 (West 1998))), Taxpayers were members of a "unitary business group" for the years 1991, 1992, and 1993, as defined in section 1501(a)(27) of the Tax Act (35 ILCS 5/1501(a)(27) (West 1998)) and issued notices of deficiency against Hormel in the amount of $101,191 and Jennie-O in the amount of $214,210.  We affirm.

BACKGROUND

Hormel is an Austin, Minnesota-based meat processor and manufacturer of food products.  Hormel has acquired several subsidiary companies, all of which are somehow related to the food business.  Hormel classifies its subsidiaries as either "core" subsidiaries or "stand-alone" subsidiaries.  The core subsidiaries are operated as divisions of Hormel and are not run as separate companies.  During the tax years at issue, the core companies were Dubuque Foods, Logistice Services, Inc., Creative Contract Packaging (CCP), Rochelle Fresh Meats, Rochelle Processed Meats, Rochelle Foods, and Dold Foods.  During the tax years at issue, the stand-alone companies were Jennie-O, Catalogue Marketing, Hormel International, Vista, Farm Fresh Catfish, Algona Food Equipment Co., Inc., Dan's Prize, Inc., and Dubuque/FDL Marketing.

Hormel filed a separate Illinois corporate income tax return for the tax year ending October 31, 1991.  Hormel filed a combined Illinois return with CCP (one of Hormel's core subsidiaries) for the tax year ending October 31, 1992.  Hormel filed a combined Illinois return with CCP and Dubuque (also a core subsidiary) for the tax year ending October 31, 1993.  Vista (a stand-alone subsidiary) filed separate Illinois corporate income tax returns for tax years ending October 31, 1991 through October 31, 1993.

After an audit, the Director issued notices of deficiency to Hormel and Jennie-O for $101,919 and 214,210, respectively, and a notice of overpayment of $28,293 to Vista on January 31, 1996.  Hormel and Jennie-O protested the notices and asserted that they were not a unitary business group for purposes of the Tax Act.

After a hearing, the administrative law judge (ALJ) found that "Hormel and all of its subsidiaries are functionally integrated through the exercise of strong centralized management, and therefore constitute a unitary business group pursuant to 35 ILCS 5/1501(a)(27)."  As such they were required to file combined Illinois corporate tax returns.  The ALJ's finding was based in part upon the existence of a flow of knowledge and a flow of value between Hormel and its subsidiaries, in addition to the centrali-

zation of a number of corporate services at Hormel.  The Director adopted the ALJ's finding.  Thereafter, Taxpayers sought admini-

strative review in the Cook County circuit court.  The circuit court affirmed the ALJ's ruling and Taxpayers now appeal.

The issue before us is whether Hormel and its subsidiaries comprise a unitary business group as defined in section 1501(a)(27) of the Illinois Income Tax Act.

ANALYSIS

I.  Overview

Under the due process and commerce clauses of the United States Constitution, a state may tax income earned only within its borders.  See 
Container Corporation of America v. Franchise Tax Board
, 463 U.S. 159, 77 L. Ed. 2d 545, 103 S. Ct. 2933 (1983).  A thorough review of the principles of income apportionment for state income taxation purposes can be found in our supreme court's opinion 
General Telephone Co. v. Johnson
, 103 Ill. 2d 363, 368-72 (1984).  We will very briefly reiterate them here.

When a single-taxable entity owns and operates separate and distinct businesses in different states, the entity must determine and account for the amount of income that is attributable to the operations in each taxing state.  In such a case, because each operation is separate and distinct, the entity can accurately determine income earned in each state by utilizing the "separate accounting" method.  See 
General Telephone Co. v. Johnson
, 103 Ill. 2d 363, 369 (1984); 
Citizens Utilities Co. v. Department of Revenue
, 111 Ill. 2d 32, 39 (1986).

Somewhat more complicated is the case of a corporation that operates a single, functionally integrated business in more than one state (
i.e.
, a unitary business where each operation contributes to the income of the business as a whole).  In the case of a unitary business, the separate accounting method does not accurately divide the income among the various taxing states.  See 
General Telephone
, 103 Ill. 2d at 369; 
Citizens Utilities
, 111 Ill. 2d at 39.  So, to provide for a more exact accounting, many states, including Illinois, employ some variation of "formula apportion-

ment."  See 
General Telephone
, 103 Ill. 2d at 370; 
Citizens Utilities
, 111 Ill. 2d at 39; 35 ILCS 5/304(a) (West 1998).  Under the formula apportionment method, the income of the taxable entity is totaled and apportioned to each taxing state based on the ratio that the entity's activities in the taxing state bear to the entity's activities in all the states.  See 
General Telephone
, 103 Ill. 2d at 370; 
Citizens Utilities
, 111 Ill. 2d at 40.

An even more complicated situation exists in the case of a corporation that carries on a multistate unitary business as part of an associated group of corporations, commonly referred to as a "unitary business group."  See 
General Telephone
, 103 Ill. 2d at 371; 
Citizens Utilities
, 111 Ill. 2d at 40.  In the case of a unitary business group, Illinois uses the "combined apportionment" method to determine the income attributable to Illinois by any member of the group.  See 
General Telephone
, 103 Ill. 2d at 371; 35 ILCS 5/304(e)(West 1998).  The combined apportionment method operates to treat the group of corporations as though it was a single-taxable entity carrying on a unitary business.  See 
Citizens Utilities
, 111 Ill. 2d at 40.  Similar to formula apportionment, the combined apportionment method takes the total income of the unitary business (by combining the income from each corporation involved in the business) and applies an apportioning ratio to the total to determine the taxable income of the member operating in the taxing state.  See 
General Telephone
, 103 Ill. 2d at 371-72; 
Citizens Utilities
, 111 Ill. 2d at 40.

Because there are constitutional limitations on a state's power to tax income that arises out of interstate activities, a state may tax out-of-state activities of an associated corporation by combined apportionment only when the corporations constitute a "unitary business."  See 
Container Corp. v. Franchise Tax Board
, 463 U.S. 159, 165-67, 77 L. Ed. 2d 545, 553-55, 103 S. Ct. 2933, 2940-41 (1983).  Taxpayers in the case at bar appeal the determina-

tion that they comprise a unitary business group and, as such, are required to report their income using the combined reporting method.

II. Standard of Review

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 1998)), we review the administra-

tive agency's decision, not the circuit court's determination.  See 
XL Disposal Corporation, Inc. v. Zehnder
, 304 Ill. App. 3d 202, 207 (1999).  An administrative agency's decisions on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence.  See 
XL Disposal
, 304 Ill. App. 3d at 207.  Questions of law decided by an administrative agency are not entitled to deference and, however, are reviewed 
de novo
.  See 
XL Disposal
, 304 Ill. App. 3d at 207.  

Here, both parties recognize that the issue in this case cannot be neatly characterized as either one of law or fact.  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  The ALJ's finding is factual, in part, because it involves considering whether the facts in this case support a finding that Taxpayers participated in a unitary business.  See 
Citizens Utilities
, 111 Ill. 2d at 47.  The ALJ's finding also concerns a question of law because the term "unitary business" is statutory and, thus, requires interpretation.  Consequently, because this case involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law and the ALJ's determination should be affirmed unless clearly erroneous.  See 
XL Disposal Corp
, 304 Ill. App. 3d at 207.

"Clearly erroneous" is said to rest somewhere between the "manifest weight of the evidence" standard and the 
de novo
 standard, requiring us to afford some deference to the agency's experience and expertise.  
City of Belvidere
, 181 Ill. 2d at 205.  Under this standard, we must accept the administrative agency's findings unless we are "left with the definite and firm conviction that a mistake has been committed."  
Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust
, 508 U.S. 602, 622, 124 L. Ed. 2d 539, 563-64, 113 S. Ct. 2264, 2279 (1993), quoting
 United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

III.  Unitary Business Group

Taxpayers argue on appeal that the ALJ's finding that Hormel and its subsidiaries constitute a unitary business group must be reversed because the ALJ based her finding on improper factors and, moreover, failed to independently examine the elements of strong centralized management as provided in section 1501(a)(27) of the Tax Act.

Under section 1501(a)(27) of the Tax Act, a "unitary business group" is defined in pertinent part as follows:

"(27) Unitary business group.  The term 'unitary business group' means a group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to each other.  ***  Unitary business activity can ordinarily be illustrated where the activities of the members are: (1) in the same general line (such as manufacturing, wholesaling, retailing of tangible personal property, insurance, transportation or finance); or (2) are steps in a vertically structured enterprise or process (such as the steps involved in the production of natural resources, which might include exploration, mining, refining, and marketing); and, in either instance, the members are functionally integrated through the exercise of strong centralized management (where, for example, authority over such matters as purchasing, financing, tax compli-

ance, product line, personnel, marketing and capital investment is not left to each mem-

ber)."  35 ILCS 5/1501(a)(27)(West 1998).

"Business activity" is the essential element in the definition of a unitary business group and under the Tax Act unitary business activity is illustrated where the members are either (1) engaged in the same line of business 
and
 functionally integrated through the exercise of strong centralized management, or (2) steps of a vertically integrated enterprise 
and
 functionally integrated through the exercise of strong centralized management.

In the ALJ's analysis of whether Hormel and its subsidiaries comprise a unitary business group, the ALJ began by referencing the Tax Act.  She noted, and we agree, that there is no dispute that Hormel and its subsidiaries are in the same general line of business; all of the companies are involved in some aspect of manufacturing in the food industry.  Therefore, as the ALJ determined, the issue before her, and now before this court, is whether the entities are functionally integrated through the exercise of strong centralized management.

First, the ALJ recognized the existence of a flow of value between Hormel and its subsidiaries.  She stated that while a flow of value was certainly typified through intercompany transfers of raw materials and finished product, it more significantly was demonstrated through a flow of knowledge.  She emphasized that a transfer of know-how "is a key indicator of the economic interrela-

tionship between the companies."  She stated that a transfer of know-how occurred between Hormel and its subsidiaries through the transfer of employees; the existence of a standard quality improve-

ment process for all subsidiaries; the instruction provided to the subsidiaries by Hormel engineers on plant maintenance; and the use by the subsidiaries of Hormel's research and development facility.

Second, the ALJ found the existence of "synergies" between Hormel and its subsidiaries.  She pointed to the following testi-

mony of Dan Hodapp (executive vice president and chief financial officer of Hormel and vice president of Jennie-O) regarding Hormel's decision-making process related to acquisitions:

"And there we're looking for companies that we think – that some way we can – that will add to what we're doing or that can help in some way or another add to what they're doing.

***

We likely will not go out and buy an electronics company or make radios or televis-

ion sets.  But we are interested in anything in the food business because we think that's where our expertise is, and that's where our knowledge and skills are.

So what we are looking for are ways to expand the company to get returns to our shareholders, especially in those areas and in those functions 
where there is some knowledge and some additions can be made both ways
, and also that are consistent with the reason that our shareholders have invested in your com-

pany.  In other words we're in the food busi-

ness."  (Emphasis added.)

The ALJ stated that the synergies described by Hodapp existing between Hormel and its subsidiaries exemplify "a group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to each other."  35 ILCS 5/1501(a)(27)(West 1998).

Third, the ALJ found the existence of strong centralized management.  This was indicated, she noted, by significant movement of highly placed personnel from Hormel to the subsidiaries and often back to Hormel.  She also found relevant the fact that Hormel provides a number of services to its subsidiaries, such as:  internal audit services, legal services, insurance services and investment services.  She also noted that Hormel prepares the consolidated financial statements and tax returns.  She further noted that Hormel's approval is required for large purchases by the subsidiaries.  In addition, she noted that Hormel's subsidiaries do not obtain their own financing but that all monies come from Hormel in the form of intercompany loans.  Finally, she noted that all of the subsidiaries report their financial results to the Hormel Board at every board meeting, which occurs every two months.

Thus, the ALJ concluded that, because the facts demonstrate a flow of knowledge, a significant level of control by Hormel over the subsidiaries, and the centralization of a number of corporate services at Hormel, Hormel and its subsidiaries comprise a unitary business group.

The Taxpayers challenge the ALJ's finding and argue that she failed to properly apply section 1501(a)(27) of the Tax Act.  Specifically, Taxpayers assert that the ALJ ignored the following phrase in section 1501(a)(27)(2):  "where, for example, authority over such matters as purchasing, financing, tax compliance, product line, personnel, marketing and capital investment is not left to each member."  35 ILCS 5/1501(a)(27)(2) (West 1998).  Taxpayers assert that this language requires the ALJ to find that Hormel has control over each of the enumerated areas in order to conclude that Taxpayer's are functionally integrated through the exercise of strong central management and, that the ALJ's failure to do so renders her decision erroneous.  To support this argument, Taxpayers rely on the legislative history of section 1501(a)(27) and assert it demonstrates an intent of the General Assembly to more narrowly define a unitary business for purposes of the Tax Act than permitted under the United States Constitution.

During the 1982 session, the Illinois General Assembly passed House Bill 2588, which completely prohibited combined tax reporting by corporations.  Ill. House Journal, 82d Ill. Gen. Assem., May 19, 1982, at 1353, 1361, 1362; 82d Ill. Gen. Assem., May 21, 1982, at 85-100; 82 Ill. Gen. Assem., House Senate Proceedings, June 24, 1982, at 127-50.  Governor Thompson, however, exercised an "amendatory veto" pursuant to article IV, section 9(e), of the Illinois Constitution of 1970, and returned the bill to the House with specific recommendations for change.  The Governor suggested that the bill be amended to allow combined reporting of corporations' domestic income, but not for earned income overseas.  He also proposed a definition of "unitary business group" to clarify when combined reporting was necessary:  

"First, I am recommending that Illinois statutes clearly define a unitary group as one in which the members are in the same line of business, are on the same apportionment for-

mula, and are functionally integrated.  In many of the other States which apply combined reporting, these definitions are not spelled out and taxation decisions may be arbitrary and may be based on factors other than busi-

ness activity.  With these definitions placed in the Statutes, Illinois will provide the certainty and the stability so important to businesses, particularly those considering expanding within or into Illinois."  Ill. Senate Journal, 82d Ill. Gen. Assembly, November 19, 1982, at 3756.

Thereafter, the recommended changes were adopted by a majority of each house of the General Assembly.  As amended, the Tax Act added a provision that expressly requires combined apportionment for taxpayers who are members of a statutorily defined unitary business group.  Ill. Rev. Stat. 1983, ch. 120, pars. 3-304(e), 15-1501(a)(28).

Taxpayers argue that the Governor's veto message "leaves no doubt that the intent of the statute was to 
narrow
 the definition that had been applied by other states."  (Emphasis in original.)  Taxpayers contend that the focus on "business activity" allows only consideration of objective facts and not the subjective "transfers of knowledge" or "synergies" relied upon by the ALJ.

Taxpayers also assert that any reliance on cases decided prior to the enactment of the amendment is misplaced.  Prior to the amendment, Illinois defined a unitary business through state common law.  In its 1981 decision in 
Caterpillar Tractor Co. v. Lenckos
, 84 Ill. 2d 102 (1981), our supreme court described a unitary business group as a

"group of functionally integrated corporate units which are so interrelated and interde-

pendent that it becomes relatively impossible for one State to determine the net income generated by a particular corporation's activ-

ities within the State and therefore allocable to that State for purposes of taxation."  
Catepillar Tractor Co.
, 84 Ill. 2d at 116.

In concluding that the Catepillar Tractor Company was a unitary business the court noted that it

"maintain[ed] strict uniformity in areas such as product design, control maintenance, accounting procedures, research and develop-

ment and even a uniform standard or code of the conduct for its personnel throughout the world.  Any suggested changes or departures from these uniform procedures are subject to final approval from the corporation's princi-

pal headquarters in Peoria."  
Catepillar Tractor Co.
, 84 Ill. 2d at 117.

In the later case of 
Citizens Utilities Company of Illinois v. Department of Revenue
, 111 Ill. 2d 32 (1986), which dealt with tax years ending prior to the enactment of section 1501(a)(27), the supreme court stated that "[f]unctional integration and economies of scale, as well as direct transfers of value, are all indicative of a unitary business since the contributions of each entity increase the taxable income of all the others."  
Citizens Utilities
, 111 Ill. 2d at 48.  In upholding the finding that the taxpayer was part of a unitary business, the 
Citizens Utilities
 court found the following facts relevant:  (1) the parent and all its subsidiaries share the same officers as well as interlocking boards of directors; (2) parent must approve disbursements; (3) parent provides legal assistance and reviews major engineering projects; (4) parent provides complex accounting functions; and (5) an intercompany account provides parent access to revenues received by subsidiaries.  See 
Citizens Utilities
, 111 Ill. 2d at 48.

We find that the ALJ properly found Taxpayers to be a unitary business group.  First, we reject Taxpayers' assertion that section 1501(a)(27) of the Tax Act requires us to find that Hormel exerts authority over every function enumerated.  Section 1501(a)(27) states:

"[T]he members are functionally integrated through the exercise of strong centralized management (where, 
for example
, authority over 
such matters as
 purchasing, financing, tax compliance, product line, personnel, marketing and capital investment is not left to each member)." (Emphasis added.) 35 ILCS 5/1501(a) (27) (West 1998).

Enumeration of a list of factors in a statute does imply the exclusion of others unless there is evidence of a contrary legislative intent.  See 
Baker v. Miller
, 159 Ill. 2d 249, 260 (1994).  Here the use of the phrases "for example" and "such matters as" in the definition is evidence of a contrary legislative intent.  Those phrases show that the list of items is exemplary only and not exclusive.  
Cf.
 
Gem Electronics of Monmouth, Inc. v. Department of Revenue
, 286 Ill. App. 3d 660, 667 (1997) ("The words 'include' or 'including' are ordinarily terms of enlargement rather than restriction and indicate that items enumerated in a statute are not meant to be exclusive").

Moreover, a review of the pertinent department regulation demonstrates that the functions enumerated in the Tax Act are not the only factors which may be considered.  The regulation states:

"The exercise of strong centralized management will be deemed to exist where authority over such matters as purchasing, financing, tax compliance, product line, personnel, marketing and capital investment is not left to each member.  Thus some groups of persons may properly be considered to constitute a unitary business group under [the Tax Act] Section 1501(a)(27) when the executive officers of one of the persons are normally involved in the operations of the other persons in the group and are centralized units which perform for some or all of the persons functions which truly independent persons would perform for themselves. 
Note in this connection that neither the existence of central management authority, nor the exercise of that authority over any particular function (through centra-

lized operations), is determinative itself; the entire operations of the group must be examined in order to determine whether or not strong centralized management exists
."  (Emphasis added.) 86 Ill. Adm. Code, §100.9700(g) (1996).

Thus, as the ALJ recognized, Hormel need not have authority over every function that is enumerated in the Tax Act to show that it exercises strong centralized management over the subsidiaries.  As the regulation makes clear, to find the existence of strong centralized management, one must examine the entire operation as a whole.  Also, as noted in 
A.B. Dick Co. v. McGraw
, 287 Ill. App. 3d 230 (1997), "[t]he justification for combined reporting is that there are 'many subtle and largely unquantifiable transfers of value that take place among the components of a single enter-

prise.' "  
A.B. Dick Co.
, 287 Ill. App. 3d at 239, quoting 
Container Corp.
, 463 U.S. at 164-65, 7 L. Ed. 2d at 553, 103 S. Ct. at 2940.  

We also reject Taxpayers' argument that it was error for the ALJ to rely upon 
Caterpillar Tractor
.  There is no evidence that the General Assembly intended to reject or limit 
Caterpillar Tractor
's understanding of the unitary business principal and the case is not mentioned in Governor Thompson's veto message.  "A statute will be construed as changing common law only to the extent that the terms thereof warrant, or as necessarily implied from what is expressed."  
Hawkins v. Hawkins
, 102 Ill. App. 3d 1037, 1039 (1981), citing 
Sternberg Dredging Co. v. Estate of Sternberg
, 10 Ill. 2d 328 (1957).  In examining the entire operation of Hormel and its subsidiaries as a whole, the ALJ properly took into consideration the Illinois cases of 
Caterpillar Tractor
, 
Citizens Utilities
, 
A.B. Dick
.

After a thorough review of the record herein, we cannot say that we are "left with the definite and firm conviction that a mistake has been committed" (
Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust
, 508 U.S. 602, 622, 124 L. Ed. 2d 539, 563-64, 113 S. Ct. 2264, 2279 (1993), quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed.  746, 766, 68 S. Ct. 525, 542 (1948)) and, accordingly, we hereby affirm.

Affirmed.

O'Brien
, J., and 
Gallagher
, J., concur.