# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-1632

IN RE: ENVIRODYNE INDUSTRIES, INC., *et al.*,

*Debtors-Appellees.*

APPEAL OF: ILLINOIS DEPARTMENT OF REVENUE.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 7861—**Suzanne B. Conlon**, *Judge.*

_____

ARGUED OCTOBER 31, 2003—DECIDED JANUARY 6, 2004

_____

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The Illinois income tax statute requires firms that constitute a "unitary business group" to file a consolidated (called a "combined") return. 35 ILCS 5/502(e); Ill. Admin. Code tit. 86, § 100.5200. The quoted term signifies "a group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to each other." 35 ILCS 5/1501(a)(27). They must be "functionally integrated through the exercise of strong centralized management (where, for example, authority over such matters as purchasing, financing, tax compliance, product line, personnel, marketing and capital investment is not left to each member)." *Id.*

   Why does Illinois require unitary business groups so defined to file consolidated returns? Presumably to reach income generated in other states by businesses that operate in Illinois as well. The federal Constitution has been interpreted to forbid a state to tax income generated wholly outside the state. *Allied-Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 777-78 (1992); *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983). But the income of a genuinely integrated multistate enterprise is not generated entirely in one state, and so its income must be apportioned for tax purposes among the states in which the enterprise operates. *Id.* at 169; *Allied-Signal, Inc. v. Director, Division of Taxation*, *supra*, 504 U.S. at 772. If a firm owns a plant in Illinois that delivers its output of beer mugs to the firm's distribution facilities in Wisconsin for sale to residents of Wisconsin, is the income generated from those sales earned in Wisconsin or in Illinois? It is earned in both, and so must be apportioned in a way that will avoid, so far as possible, multiple taxation of the firm. But suppose the firm is a holding company one of whose subsidiaries owns a plant in Illinois that sells toothbrushes to Chicagoans and the other a dance studio in Wisconsin that sells dancing lessons to Wisconsinites, and the subsidiaries are operated as more or less independent enterprises. It would be unreasonable for Illinois to try to tax the income of the dance studio but reasonable for it to tax some of the income of the beer-mug sales in our first hypothetical, for that is a case of a unitary business group. The constitutional test is that "the out-of-state activities of the purported 'unitary business' [must] be related in some concrete way to the in-state activities. The functional meaning of this requirement is that there be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula

apportionment a reasonable method of taxation. . . . [We have] recognized that the unitary business principle could apply, not only to vertically integrated enterprises, but also to a series of similar enterprises operating separately in various jurisdictions but linked by common managerial or operational resources that produced economies of scale and transfers of value." *Container Corp. of America v. Franchise Tax Bd.*, *supra*, 463 U.S. at 166.

Envirodyne owns several subsidiaries that make food packaging materials and several others (including Wisconsin Steel Company) that make steel; for simplicity, we'll pretend that there is just one food-packaging subsidiary and one steel subsidiary, and we'll also ignore other subsidiaries of Envirodyne. For the tax years in question, Envirodyne filed consolidated Illinois income tax returns so that it could offset losses incurred by the steel subsidiary against income of the food-packaging subsidiary. The losses were incurred outside Illinois, and so are allocable to Illinois only if the subsidiaries are parts of the same unitary business group. Envirodyne and the food-packaging subsidiary are conceded to constitute a unitary business enterprise entitled to file a consolidated Illinois income tax return. The record contains little information on the scope of Envirodyne's food-packaging operations. It does indicate that some of these operations are in Illinois and some in other states, including California, Massachusetts, and Ohio, and also overseas, but it does not indicate what percentage of Envirodyne's total food-packaging earnings are generated in Illinois.

The Illinois Department of Revenue filed a claim in bankruptcy court for the additional taxes that Envirodyne owes if, as the Department concluded after an audit, Envirodyne wasn't authorized to include the losses of the steel subsid-

iary in its consolidated returns. The bankruptcy judge, seconded by the district judge, ruled in favor of Envirodyne, which had the burden of proving its entitlement to file consolidated returns, because that would have been its burden in an Illinois state court. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20-22 (2000); see 35 ILCS 5/904(a); Ill. Admin. Code tit. 86, § 100.9300(a); *PPG Industries, Inc. v. Department of Revenue*, 765 N.E.2d 34, 48-49 (Ill. App. 2002). The facts are stipulated; the issue is their legal significance.

Envirodyne is actively involved in the management of both subsidiaries; both may therefore be said to be under common management and each, we may assume, is functionally integrated with Envirodyne. That, Envirodyne argues (and the district court agreed, which is why the Illinois Department of Revenue is the appellant), is all that's required to create a unitary business group. That there is no integration between the food-packaging subsidiary and the steel subsidiary—no common pension or welfare plans, no common employee handbook, no joint advertising—the two companies constituting spokes with a hub at Envirodyne but no rim, except, of course, that Envirodyne files consolidated tax returns on behalf of all its subsidiaries and therefore must provide the legal and accounting services required for the preparation of the returns—all this, Envirodyne's argues, is irrelevant.

The statute, however, says that the members of a unitary business group must depend on and contribute to *each other*. It cannot be enough that each depends on and contributes to its parent. The concept of the unitary business group, to be a constitutional basis for taxing income earned out of state, must identify a genuine multistate enterprise—an enterprise that generates income which can't confidently be ascribed to a particular state in which the enterprise operates. If a holding company owns two unrelated companies

that operate in two different states, the state in which one of them operates cannot tax the income of the other just because the two are affiliates and each is under the control of their common parent. *Allied-Signal, Inc. v. Director, Division of Taxation*, *supra*, 504 U.S. at 772-73; *F.W. Woolworth Co. v. Taxation & Revenue Dep't*, 458 U.S. 354, 362 (1982); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 439-40 (1980). By the same token—since what is sauce for the goose is sauce for the gander—one of the affiliates can't use the other's losses to reduce its own tax liability. If Envirodyne owned a money-losing rickshaw operator in Mandalay, it could not reduce the income from its food-packaging operations in Illinois by the losses of its rickshaw operation.

Illinois may be shortsighted in urging a construction of "unitary business group" that requires genuine integration, for that will make it harder for the state to reach out and tax income of affiliates of Illinois firms in other states. But that is a tactical decision for the state to make; it has no bearing on our interpretation and application of the statute.

Both parties point to judicial language that supports their respective interpretations of the meaning of unitary business enterprise. Compare *Citizens Utilities Co. v. Department of Revenue*, 488 N.E.2d 984, 990-92 (Ill. 1986); *Hormel Foods Corp. v. Zehnder*, 738 N.E.2d 145, 149-53 (Ill. App. 2000); *Borden, Inc. v. Illinois Dep't of Revenue*, 692 N.E.2d 1335, 1337-41 (Ill. App. 1998), and *A.B. Dick Co. v. McGraw*, 678 N.E.2d 1100, 1104-08 (Ill. App. 1997), cited by Envirodyne, with *Louis Dreyfus Corp. v. Huddleston*, 933 S.W.2d 460, 469-71 (Tenn. App. 1996); *State ex rel. Arizona Dep't of Revenue v. Talley Industries, Inc.*, 893 P.2d 17, 25-26 (Ariz. App. 1994); *Department of Revenue v. Terrace Tower U.S.A., Inc.*, 15 Ore. Tax 168, 173 (Tax Ct. 2000), and *Central National-Gottesman, Inc. v. Director, Division of Taxation*, 14

N.J. Tax 545, 556-60 (Tax Ct. 1995), cited by the Illinois Department of Revenue. The Illinois cases, all cited by Envirodyne, bear more directly on the meaning of the Illinois statute, so we shall focus on them. Envirodyne points out that they require neither any actual transfer of product (vertical integration) between an affiliate with out-of-state income that Illinois wants to tax and one with in-state income for unitary status to be achieved, nor that the affiliate having out-of-state income be integrated with *all* the affiliates that have in-state income. But there has to be *some* integration beyond the bare minimum of central-office functions shared by virtue of the affiliates' having a common parent that has decided to file consolidated tax returns and, as a corollary of that decision, to perform the legal and accounting services required for the preparation of those returns.

In the only decision by the Supreme Court of Illinois that Envirodyne cites on the meaning of unitary business group, we read:

> The record shows the taxpayer and all other subsidiaries in the group to be wholly owned subsidiaries of the parent, and—with few exceptions—the parent and all its subsidiaries share the same officers as well as interlocking boards of directors. Although day-to-day management of the operating subsidiaries is controlled by local managers, the parent's headquarters in Connecticut . . . must specifically approve disbursements made by local managers over certain amounts. In the taxpayer's case, specific approval is required for all purchases exceeding $500. Headquarters also reviews major engineering projects and provides legal assistance in interpretation of State and Federal laws. Complex accounting functions, including preparation of the taxpayer's income tax returns, are also provided by the

> headquarters. All of these services are performed for the taxpayer, and the other subsidiaries, at cost: the parent charges only to recover labor and overhead costs associated with those services provided. Revenues received by the taxpayer are deposited in a local bank and can be withdrawn by the parent at any time. When revenues are withdrawn by the parent, a debit is entered on the taxpayer's intercompany account. That account, carried as a liability by all the subsidiaries with a corresponding account on the parent's books, is the means by which the parent skims earnings from one subsidiary for investment in another. Such investments are made as interest-free loans routed through the intercompany account.

*Citizens Utilities Co. v. Department of Revenue*, *supra*, 488 N.E.2d at 990-91. At first glance it might seem that all that was involved in *Citizens Utilities* was parental control of each sub—a hub and spokes with no rim. But the appearance is misleading. All the subsidiaries were engaged in the same business, that of supplying water and water-treatment services, and, primarily through the capital-allocation method described at the end of the quoted passage, they were being managed essentially as a single enterprise.

The functional integration was as clear or clearer in the three decisions by the Illinois Appellate Court that Envirodyne cites, as well as in the only other pertinent Illinois decisions that we have found. *Caterpillar Tractor Co. v. Lenckos*, 417 N.E.2d 1343, 1351 (Ill. 1981); *PPG Industries, Inc. v. Department of Revenue*, *supra*, 765 N.E.2d at 40-42. In the *Caterpillar* case, the Supreme Court of Illinois said that

> the term "unitary business group," when applied to a corporation which has subsidiaries or other associated corporations in other States or countries, is used to

> describe a group of functionally integrated corporate units which are so interrelated and interdependent that it becomes relatively impossible for one State to determine the net income generated by a particular corporation's activities within the State and therefore allocable to that State for purposes of taxation. A classic illustration of a unitary business is the Caterpillar Tractor Company. . . . Despite the magnitude and diversity of [its] multistate and multinational operations, there is an overriding corporate design to maintain strict uniformity in areas such as product design, control maintenance, accounting procedures, research and development and even a uniform standard or code of the conduct for its personnel throughout the world.

417 N.E.2d at 1351. There is nothing comparable here.

Envirodyne cites a regulation of the Illinois Department of Revenue which says that it's enough to create a unitary business group that although the "subsidiaries were relatively autonomous in their day-to-day operations," and "there was no significant flow of goods between any of the corporations," the parent provided "centralized warehousing, [financing, inventory,] and accounting functions for itself and its subsidiaries." Ill. Admin. Code tit. 86, § 100.3010(c)(4)(D). This makes sense because if the subsidiaries were sharing all these functions, the income of each subsidiary would be determined to a significant effect by activities taking place in another state, just as in the *Citizens Utilities* case. Suppose that one subsidiary sells widgets in Illinois and another in Wisconsin, but all the widgets are warehoused in Illinois, the billing and all other back-office functions are performed in Illinois, and so forth; then the income from the sale of the widgets in Wisconsin would be generated to a significant extent by activities in Illinois, and

Illinois would therefore have a claim to tax part of that income. It would be providing public services to the Illinois branch of the enterprise (police and fire protection for the warehouse, for example) and in doing so helping the Wisconsin branch to obtain revenues. The goal of apportioning income for tax purposes is, so far as possible, to match income to the state's provision of services that help to produce or safeguard that income.

Envirodyne is left to argue that since it participated in the management of the steel company, it should be deemed integrated with it. If true, this is irrelevant. It is trying to offset the steel company's losses in Wisconsin (and other states other than Illinois) not against income by the food-packaging subsidiary in Wisconsin, but rather against the income of that subsidiary that is taxable in Illinois, and that subsidiary has no connection with the steel company beyond what is implicit in Envirodyne's filing consolidated returns for all its subsidiaries. No protective or other services rendered by Illinois to the food-packaging subsidiary contributed to the income, or caused the losses, of the steel company in Wisconsin. There would be no basis for Illinois's trying to tax any of the steel company's income, and there is likewise no basis for Envirodyne's trying to reap an Illinois tax benefit from any of those losses.

We will not pretend that the course of decision in Illinois has run entirely true. Particularly troublesome is language in two of decisions of the Illinois Appellate Court cited by Envirodyne that, in the teeth of the statute, equates common management to functional integration, *A.B. Dick Co. v. McGraw, supra*, 678 N.E.2d at 1102; *Borden, Inc. v. Illinois Dep't of Revenue, supra*, 692 N.E.2d at 1340, which if taken literally—since wholly owned subsidiaries of the same parent corporation are normally considered under common

management—would imply unconstitutionally that all such affiliated groups were unitary business enterprises. But our decision is supported by the purpose and the language of the statute, and neither party has suggested that we certify the question to the Supreme Court of Illinois, a referral that would in any event be awkward because of the fact-specific nature of the question. *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1395 (7th Cir. 1992); *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir. 1990); see also 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4248, pp. 173-74 (2d ed. 1988).

One loose end remains to be noted. We know that some of Envirodyne's food-packaging operations are in Illinois and others outside, but we do not know how much of the earnings from those operations Envirodyne allocated to Illinois. To the extent that such allocation is discretionary because of the inherent uncertainties involved in the allocation of joint and common costs, Envirodyne would have had an incentive to allocate as much of those earnings as possible to Illinois, up to the amount of the out-of-state steel losses, if it thought it could offset the latter against the former. With that option denied, Envirodyne may wish to consider filing an amended return "deconsolidating" the food-packaging operations in order to be able to file a consolidated return in another state, which might be more advantageous given our ruling that the Illinois Department of Revenue was entitled to deny the offset. Whether Envirodyne can do this is a question of Illinois law on which we express no view; it can be considered on remand.

The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

No. 02-1632                                                    11

A true Copy:

    Teste:

                          _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*