# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Clarcor, Inc. v. Hamer*, 2012 IL App (1st) 111674

---

| | |
|---|---|
| Appellate Court Caption | CLARCOR, INC., Plaintiff-Appellant, v. BRIAN A. HAMER, as Director of the Illinois Department of Revenue, and THE ILLINOIS DEPARTMENT OF REVENUE, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1674 |
| Filed<br>Rehearing denied | May 11, 2012<br>June 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court rejected plaintiff corporation's challenges to the finding of the Director of the Illinois Department of Revenue that the packaging subsidiaries of plaintiff's corporate organizations should be included with plaintiff and its filtration subsidiaries as one "unitary business group" for tax purposes, since plaintiff's subsidiaries are horizontally integrated by their sharing of cash, they have common pension and welfare plans, 401(k) plans and health insurance plans, and stock option compensation for the subsidiaries' senior management is based on plaintiff's performance as a whole, and the evidence does not support plaintiff's claim that it has less control over the filtration subsidiaries than the packaging subsidiaries. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-51291; the Hon. James C. Murray, Jr., Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | David A. Hughes and Megan A. Mathias, both of Horwood Marcus & Berk, Chtrd., of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE R. GORDON delivered the judgment of the court, with opinion. |
| | Justices Garcia and Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this appeal, plaintiff Clarcor, Inc., seeks a refund of a portion of the Illinois corporate taxes that it had already paid.

¶ 2    This corporate plaintiff has subsidiaries that are engaged primarily in packaging and subsidiaries that are engaged primarily in filtration. On its original tax returns for the tax years 2002 and 2003, plaintiff included both the packaging and the filtration subsidiaries on its returns. However, after the Seventh Circuit issued a decision in *In re Envirodyne Industries, Inc.*, 354 F.3d 646 (7th Cir. 2004), plaintiff filed amended returns, in an attempt to report the packaging subsidiaries as a separate entity and to claim a refund.

¶ 3    Plaintiff does not seek to report the filtration subsidiaries separately. Thus, plaintiff asks us to find that the parent and the filtration subsidiaries are one group, and that the packaging subsidiaries are a second and separate group for tax purposes.

¶ 4    Specifically, in this appeal, plaintiff challenges the finding of the defendant Director of the Illinois Department of Revenue that the packaging subsidiaries should be included with plaintiff and its filtration subsidiaries as one "unitary business group" for tax purposes. In support, plaintiff raises two distinct arguments. First, plaintiff argues that the Seventh Circuit's holding in *Envirodyne*, 354 F.3d 646, requires horizontal integration between the subsidiaries, and not just vertical controls between the parent and its subsidiaries and that there was insufficient horizontal integration between its packaging and filtration subsidiaries for the Department to find a unitary business group. Second, plaintiff argues that, even if horizontal integration was not required between the subsidiaries, there was insufficient vertical integration between the parent and its packaging subsidiaries to justify the Department's finding of a unitary business group. In other words, plaintiff argues that both the horizontal connections (between subsidiaries) and the vertical connections (between parent and subsidiaries) were lacking. For the following reasons, we do not find these arguments persuasive.

¶ 5                                    BACKGROUND

¶ 6                                I. Factual Background

¶ 7      The record before us establishes the following facts concerning plaintiff Clarcor and its subsidiaries.

¶ 8      Plaintiff Clarcor is a publicly traded corporation with its headquarters in Rockford, Illinois. It was first established in 1904 under the name "J.L. Clark Manufacturing," as a company which engaged exclusively in packaging and metal lithography.

¶ 9      J.L. Clark had a long history of manufacturing packaging materials, specifically high-end lithographic packaging, before it entered into the filtration business. After 70 years of operation, plaintiff entered the filtration business in 1974 when it acquired Stone Industrial Corporation, which also had a filter division. In 1981, plaintiff expanded its filtration business when it also acquired J.A. Baldwin Company, which was later renamed Baldwin Filters.

¶ 10     In 1987, plaintiff became reorganized. Instead of being named "J.L. Clark Manufacturing, Inc.," it was renamed "Clarcor, Inc." It also created two new holding companies: Clarcor Consumer Products, Inc., which became the holding company for the group's packaging business; and Clarcor Filtration Products, Inc., which became the holding company for the group's filtration companies.

¶ 11     Despite the reorganization, plaintiff Clarcor maintained ownership of both the filtration and the packaging holding companies which, in turn, owned the filtration and packaging subsidiaries. Thus, plaintiff Clarcor owned the stock of Clarcor Consumer Products which, in turn, owned the stock of J.L. Clark, which was engaged in the manufacture of metal packaging, as well as related services. Similarly, plaintiff Clarcor owned the stock of Clarcor Filtration Products which, in turn, owned the group's filtration companies, such as Baldwin Filters.

¶ 12     Plaintiff Clarcor's chief executive officer, chief financial officer, vice president and controller, and its general counsel all became officers of each filtration and packaging subsidiary. Plaintiff Clarcor's officers also had the signing authority for the tax returns of all its subsidiaries. Plaintiff Clarcor oversaw the hiring of senior management personnel at each of its subsidiaries and determined the compensation of their senior management officials. Stock option compensation for these employees was determined based on the performance of plaintiff Clarcor as a whole, and not on the performance of the individual subsidiary.

¶ 13     The subsidiaries did not have their own separate boards of directors. However, they did maintain their own departments for purchasing, accounting, sales, human resources, information technology, marketing, and research and development. The packaging and filtration businesses did not share common facilities, such as warehouses, or common product catalogs.

¶ 14     Plaintiff Clarcor did provide services to its subsidiaries, such as payroll services and income tax preparation. There was an intercompany charge for these services. Specifically, Gary Weaver, plaintiff Clarcor's vice president of tax, testified before the administrative law judge that, for the services provided by the parent, plaintiff Clarcor charged "1.6 percent of revenue to the filtration companies[,] and 1 percent of revenue [was] charged to the

packaging [subsidiary], J.L. Clark." As part of its payroll services, plaintiff Clarcor prepared the payroll tax returns and all the payroll checks came from plaintiff Clarcor's account. Plaintiff Clarcor also managed the employee benefit programs for its subsidiaries, including pension plans, 401(k) plans, and health insurance plans. The benefit plans available to the subsidiaries were the same. Although the subsidiaries had separate human resources and information technology departments, plaintiff Clarcor's corresponding departments provided services to the subsidiaries. Plaintiff Clarcor's legal department also performed internal legal services for the subsidiaries.

¶ 15       The subsidiaries did not have to receive approval from plaintiff Clarcor for noncapital expenditures, such as inventory or raw materials. However, any capital expenditures over $25,000 by a subsidiary required the approval of plaintiff Clarcor's chief financial officer. Any expenditures over $250,000 required the approval of plaintiff Clarcor's chief executive officer; and expenditures over $4 million required the approval of plaintiff Clarcor's board of directors. Every year, each subsidiary submitted a budget and operating plan to plaintiff Clarcor for its approval, and plaintiff Clarcor reviewed the subsidiary's adherence to that budget on a monthly, quarterly and annual basis. Plaintiff Clarcor also performed an audit every year of each subsidiary to ensure compliance with financial reporting requirements.

¶ 16       All cash generated by each subsidiary was "swept" away from the subsidiary and into an account controlled by plaintiff Clarcor. Gary Weaver, plaintiff Clarcor's vice president for taxation, testified before the administrative law judge, explaining how these "sweeps" worked on a daily basis. The subsidiaries did not receive interest income from cash transferred as a result of these daily sweeps. From this common cash account, plaintiff Clarcor allocated funds as needed to any of its subsidiaries, to meet their particular operating needs. These cash transfers were recorded as credits and debits on an "intercompany payable account." At the end of the year, the value of the sweeps to plaintiff Clarcor, minus any transfers back to the subsidiaries to meet operating costs, was reported for tax purposes as a dividend from the subsidiaries to plaintiff Clarcor.

¶ 17                                    II. Procedural History

¶ 18       For 2002 and 2003, the tax years at issue, plaintiff Clarcor filed corporate income tax returns that listed all of its subsidiaries as part of a unitary business group, except for one filtration company that was excluded as a foreign affiliate. On December 22, 2006, plaintiff filed amended 2002 and 2003 returns. The amended return for plaintiff Clarcor continued to list the filtration subsidiaries as part of plaintiff Clarcor's unitary business group. However, a separate return was filed for its packaging business. The amended returns sought refunds of $92,118 for 2002 and $70,228 for 2003, for a total refund amount of $162,346.

¶ 19       The Illinois Department of Revenue denied plaintiff's refund claims, and plaintiff protested the decision. On March 31 and April 1, 2009, an administrative law judge held an evidentiary hearing. On August 24, 2009, the administrative law judge issued a written "recommendation for disposition" decision agreeing with the Department. After hearing witnesses and reviewing documentary evidence, the judge concluded that "the record in this case strongly supports a finding of pervasive functional integration throughout the Clarcor

organization during the tax periods in controversy." The judge observed that "[t]he taxpayer's argument *** is heavily premised upon the federal Appellate Court's ruling in *In re Envirodyne Industries, Inc.*, 354 F.3d 646 (7th Cir. 2004)." With respect to that decision, the judge concluded, "[e]ven if this tribunal was required to follow the court's ruling in *Envirodyne*, the holding in this case would not dictate a finding in favor of the taxpayer."

¶ 20    On August 25, 2009, the Director adopted the administrative law judge's proposed decision. Plaintiff Clarcor then appealed the matter by filing a complaint for administrative review in the trial court on September 28, 2009. On May 18, 2011, the trial court affirmed the Director's decision. Clarcor, Inc. v. Hamer, No. 09 L 51291 (Cir. Ct. Cook Co.). The trial court agreed with the administrative law judge that plaintiff "Clarcor's legal position is premise[d] on *In re Envirodyne.*" Clarcor, slip op at 4. The trial court stated that whether Clarcor "fall[s] with the perimeters of *In re Envirodyne* *** is a fact-driven analysis." *Id*. (citing *In re Envirodyne*, 354 F.3d at 652 (observing "the fact-specific nature of the question")). The trial court found that the Director's decision was not clearly erroneous. *Id*. at 12.

¶ 21    On June 13, 2011, plaintiff Clarcor filed a notice of appeal, and this appeal followed.


¶ 22                                    ANALYSIS

¶ 23    In this appeal, plaintiff claims that the Department erred by finding that the packaging subsidiaries were part of the same unitary business group to which plaintiff and the filtration subsidiaries also belonged. In support of this claim, plaintiff raises two distinct arguments. First, plaintiff argues that the Seventh Circuit's holding in *Envirodyne* requires horizontal integration between the subsidiaries, and not just vertical control between the parent and its subsidiaries and that there was insufficient horizontal integration between its packaging and filtration subsidiaries for the agency to find a unitary business group. Second, plaintiff argues that, even if horizontal integration was not required between the subsidiaries, there was insufficient vertical integration between the parent and the packaging subsidiaries to justify the agency's finding of a unitary business group. In other words, plaintiff argues that both the horizontal connections (between subsidiaries) and the vertical connections (between parent and subsidiaries) were lacking. For the following reasons, we do not find either argument persuasive, and thus we must confirm the ruling of the administrative agency.


¶ 24                              I. Standard of Review

¶ 25    The parties do not dispute what the standard of review is, nor could they. The law in this regard is well established and summarized below.

¶ 26    In an appeal from the decision of an administrative agency, an appellate court reviews the decision of the agency, not the trial court. *JM Aviation, Inc. v. Department of Revenue*, 341 Ill. App. 3d 1, 9 (2003); *Blessing/White, Inc. v. Zehnder*, 329 Ill. App. 3d 714, 726 (2002). We will presume that the agency's findings of fact are *prima facie* correct and will overturn them only if they were against the manifest weight of the evidence. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386-87 (2010); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). An

administrative agency's factual findings are against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Belvidere*, 181 Ill. 2d at 204.

¶ 27    If the agency's task is simply to apply the governing law to the agency's factual findings, then the reviewing court will reverse only if the agency's conclusion is clearly erroneous. *Belvidere*, 181 Ill. 2d at 205; *Chicago Teachers Union v. Illinois Educational Labor Relations Board*, 334 Ill. App. 3d 936, 942 (2002). We will find a conclusion clearly erroneous only when, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001); *Chicago Teachers Union*, 334 Ill. App. 3d at 942.

¶ 28    If the agency must determine what the governing law is and thus resolve a purely legal question, that purely legal conclusion is reviewed *de novo*. *JM Aviation*, 341 Ill. App. 3d at 9; *Belvidere*, 181 Ill. 2d at 205. Despite the *de novo* nature of the review, this court affords substantial deference to an agency's interpretation of a statute which the agency administers, because of the experience and expertise the agency has gained through time by enforcing the statute. *Phelan v. Village of LaGrange Park Police Pension Fund*, 327 Ill. App. 3d 527, 531 (2001).

¶ 29              II. Legal Background: Governing Statutory and Constitutional Law

¶ 30    Federal courts have interpreted the federal constitution as forbidding a state from taxing income generated wholly outside the state. *Envirodyne*, 354 F.3d at 647-48 (citing *Allied-Signal Inc. v. Director, Division of Taxation*, 504 U.S. 768, 777-78 (1992), and *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 164 (1983)). However, where there is "a genuinely integrated multistate enterprise," its income "must be apportioned for tax purposes among the states in which the enterprise operates." *Envirodyne*, 354 F.3d at 648 (citing *Allied-Signal*, 504 U.S. at 772, and *Container Corp.*, 463 U.S. at 169). Under the federal constitution, for apportionment to occur, the enterprise must be considered a " ' "unitary business" ' " group. *Envirodyne*, 354 F.3d at 648 (quoting *Container Corp.*, 463 U.S. at 166). The constitutional test for such a group is that there must " 'be some sharing or exchange of value not capable of precise identification or measurement.' " *Envirodyne*, 354 F.3d at 648 (quoting *Container Corp.*, 463 U.S. at 166).

¶ 31    The Illinois Income Tax Act provides a definition of the term "unitary business group" and it states in relevant part:

> "The term 'unitary business group' means a group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to each other. *** Unitary business activity can ordinarily be illustrated where the activities of the members are: (1) in the same general line (such as manufacturing, wholesaling, retailing of tangible personal property, insurance, transportation or finance); or (2) are steps in a vertically structured enterprise or process (such as the steps involved in the production of natural resources, which might include exploration, mining, refining, and marketing); and, in either instance, the members are functionally integrated through the exercise of strong centralized management (where, for example, authority over such

-6-

matters as purchasing, financing, tax compliance product line, personnel, marketing and capital investment is not left to each member)." 35 ILCS 5/1501(a)(27) (West 2010).

¶ 32    In the case at bar, we are asked to resolve the issue before us solely as a matter of Illinois state law. However, our interpretation of Illinois state law is informed by the outer limits provided by the federal constitution.

¶ 33    The Seventh Circuit observed that the reason why Illinois requires unitary business groups to file consolidated returns is "[p]resumably to reach income generated in other states by businesses that operate in Illinois as well" and to do so in a federally constitutionally permitted manner. *Envirodyne*, 354 F.3d at 647.

¶ 34                III. Plaintiff's First Argument: Integration of Subsidiaries

¶ 35    In its first argument, plaintiff claims that the Seventh Circuit's holding in *Envirodyne* requires horizontal integration between the subsidiaries, and not just vertical control between the parent and its subsidiaries, for them to be a unitary business group for tax purposes and that there was insufficient horizontal integration between plaintiff's packaging and filtration subsidiaries for the Department to find a unitary business group. As noted above, the Department's finding of a unitary business group is subject to a clearly erroneous review.

¶ 36    In short, plaintiff's first argument is that the Department ignored *Envirodyne* and that *Envirodyne* requires reversal. Since *Envirodyne* is at the heart of plaintiff's first argument, we will lay out its facts and history in detail.

¶ 37    In *Envirodyne*, the parent company was trying to offset the tax losses of a bankrupt subsidiary against the profits of its other subsidiaries. *Envirodyne*, 354 F.3d at 651; *Illinois Department of Revenue v. Envirodyne Industries, Inc.*, No. 01 C 7861, 2002 U.S. Dist. LEXIS 2403, at *5-6 (N.D. Ill. Feb. 15, 2002).[1] The Illinois Department of Revenue filed a claim in bankruptcy court, claiming that the parent had improperly included the bankrupt subsidiary's net carry-forward losses on the parent's tax return, because the parent and the subsidiary did not constitute "a unitary business group." *Envirodyne*, No. 01 C 7861, 2002 U.S. Dist. LEXIS 2403, at *6. Both the bankruptcy judge and the district judge ruled in favor of the parent. *Envirodyne*, 354 F.3d at 648-49.

¶ 38    Although the district court acknowledged that the parent and the subsidiary "did not have a common cash management system and its funds were not commingled" (*Envirodyne*, 2002 U.S. Dist. LEXIS 2403, at *4), the district court rejected the Department's argument that this lack of financial integration meant that the two companies were not one unitary group. The district court held that financial integration was "only one method of demonstrating a flow of value between two companies." *Envirodyne*, 2002 U.S. Dist. LEXIS 2403, at *12. The district court found that one unitary group existed based on the facts: that the parent provided

---

[1]We cite the unpublished federal district court opinion only to provide the full procedural and factual background of this case and thus provide a fuller context for understanding the subsequent Seventh Circuit decision. We do not cite it as precedent but only for its history of the case.

accounting, legal and tax services; that it was responsible for the negotiation and implementation of the subsidiary's reorganization plan; and that it selected the bankruptcy counsel and assisted with the bankruptcy proceedings. *Envirodyne*, 2002 U.S. Dist. LEXIS 2403, at *12.

¶ 39 The Seventh Circuit Court of Appeals disagreed completely and reversed. The Seventh Circuit held that "there has to be *some* integration beyond the bare minimum of central-office functions shared by virtue of the affiliates' having a common parent that has decided to file consolidated tax returns and, as a corollary of that decision, to perform the legal and accounting services required for the preparation of those returns." (Emphasis in original.) *Envirodyne*, 354 F.3d at 650.

¶ 40 Reversing the federal district court, the Seventh Circuit acknowledged the importance of a common cash-management account. *Envirodyne*, 354 F.3d at 650. In *Envirodyne*, the Seventh Circuit quoted with approval a lengthy passage from *Citizens Utilities Co. v. Department of Revenue*, in which the Illinois Supreme Court had found that a parent and subsidiary were a unitary business group. *Envirodyne*, 354 F.3d at 650 (quoting *Citizens Utilities Co. of Illinois v. Department of Revenue*, 111 Ill. 2d 32, 48 (1986)). At the end of the quoted passage, the Illinois Supreme Court described the cash-sharing system as one of the factors prompting it to find a unitary business group:

> " 'Revenues received by the taxpayer are deposited in a local bank and can be withdrawn by the parent at any time. When revenues are withdrawn by the parent, a debt is entered on the taxpayer's intercompany account. That account, carried as a liability by all the subsidiaries with a corresponding account on the parent's books, is the means by which the parent skims earnings from one subsidiary for investment in another.' " *Envirodyne*, 354 F.3d at 650 (quoting *Citizens Utilities*, 111 Ill. 2d at 48).

Commenting on the *Citizens Utilities* case, the Seventh Circuit stated it was "primarily through the capital-allocation method described at the end of the quoted passage [that] they were being managed essentially as a single enterprise." *Envirodyne*, 354 F.3d at 650. Thus, unlike the district court, the Seventh Circuit found that the presence or absence of a shared cash account to be a significant factor in deciding whether a unitary business group existed.

¶ 41 The Seventh Circuit defined a "unitary business group," for purposes of federal constitutional law, as "an enterprise that generates income which can't confidently be ascribed to a particular state in which the enterprise operates." *Envirodyne*, 354 F.3d at 649. If cash and incomes are intermingled in a cash-sharing system, then it becomes difficult to "confidently" ascribe them to a particular subsidiary or state. See *Envirodyne*, 354 F.3d at 649.

¶ 42 However, the language that plaintiff focuses on is not the definition quoted above but the two sentences that precede it. Plaintiff quotes these two sentences and then uses an ellipsis to omit the definition that immediately follows them. The two sentences quoted by plaintiff state:

> "The statute, however, says that the members of a unitary business group must depend on and contribute to *each other*. It cannot be enough that each depends on and contributes to its parent." (Emphasis in original.) *Envirodyne*, 354 F.3d at 649.

However, the Seventh Circuit then explains the reason for this requirement in the definition which plaintiff omitted: that it is the intermingling among the subsidiaries that then makes it impossible to sort out or "confidently *** ascribe" particular income or cash to a particular subsidiary or a particular state. *Envirodyne*, 354 F.3d at 649.

¶ 43    In *Envirodyne*, the Seventh Circuit found that there was "no integration" at all between the two subsidiaries–not even "common pension or welfare plans." *Envirodyne*, 354 F.3d at 649. The Seventh Circuit thus found that they were not a unitary business group.

¶ 44    Contrary to what plaintiff argues, the reasoning of *Envirodyne* actually supports the administrative law judge's finding of a unitary business group.

¶ 45    In the case at bar, the subsidiaries are horizontally integrated by their sharing of cash, a factor which the Seventh Circuit in *Envirodyne* found particularly significant. *Envirodyne*, 354 F.3d at 650 (it was "primarily through the capital-allocation method *** [that] they were being managed essentially as a single enterprise"). Like the Seventh Circuit, our supreme court found "most illuminating" "the parent's use of the intercompany account," through which subsidiaries shared cash. *Citizens Utilities*, 111 Ill. 2d at 50. Our supreme court observed that "[t]his flow of value is, in itself, strongly indicative of a unitary business." *Citizens Utilities*, 111 Ill. 2d at 50. In the case at bar, there is one common account for all the subsidiaries' cash and they receive monies from it–essentially from each other–as they need it. If cash is the lifeblood of a company, there is one set of arteries here for all the subsidiaries. With this system, one "revenue producing subsidiary loses income from the time-value of its revenues," while another subsidiary gains income "by eliminating interest expenses." *Citizens Utilities*, 111 Ill. 2d at 50. For tax purposes, it would be difficult to ascribe with certainty what cash was attributable to which entity. *Envirodyne*, 354 F.3d at 649. In addition, unlike the subsidiaries in *Envirodyne*, the subsidiaries in the case before us do have common pension and welfare plans. *Envirodyne*, 354 F.3d at 649 (stressing the importance of "common pension or welfare plans" for finding a unitary business group). They also have common 401(k) plans and health insurance plans.

¶ 46    Further, the subsidiaries here are horizontally integrated by the fact that stock option compensation for the subsidiaries' senior management are based on the performance of plaintiff Clarcor as a whole and not on the performance of their individual subsidiaries. For these reasons, we do not find persuasive plaintiff's first argument that *Envirodyne* requires reversal.

¶ 47            IV. Plaintiff's Second Argument: Integration of Parent and Subsidiary

¶ 48    While plaintiff's first argument was about a lack of horizontal integration (between subsidiaries), its second argument is about a lack of vertical control by the parent over its packaging subsidiaries.

¶ 49    As we observed above, plaintiff does not seek to report the filtration subsidiaries separately. Thus, plaintiff asks us to find that the parent and the filtration subsidiaries are one group and that the packaging subsidiaries are a second and separate group for tax purposes.

¶ 50    In essence, plaintiff claims that its filtration subsidiaries belong on the same tax return but that it somehow has less control over the packaging subsidiaries that have historically

been a part of the Illinois parent's business. It makes no sense as to why the parent has less control over the packaging companies than the filtration companies, such that the packaging companies must be separated out but the filtration companies should remain. Plaintiff offers no explanation as to why it has more control over one than the other, or why it should be allowed to keep one and not the other. The evidence does not support this position. Every claim that plaintiff makes concerning the parent's relationship with one subsidiary applies with almost equal force to the other subsidiary. We are presented with no arguments as to why the Illinois tax code should treat the two subsidiaries differently. The tax code does not create a pupu platter from which a parent selects the subsidiaries that provide the best tax treatment and then leaves the others on the plate.

¶ 51    We observe that plaintiff did not find any reason for treating them differently either, until the Seventh Circuit decision came down. However, that decision has no effect on plaintiff's second argument. That decision started with the premise that the parent's vertical control over the subsidiaries was not at issue. *Envirodyne*, 354 F.3d at 649. Thus, the Seventh Circuit's decision has no effect on this second argument of plaintiff, which is about vertical control, rather than horizontal integration.

¶ 52    For these reasons, we do not find persuasive plaintiff's second argument about a lack of vertical control.

¶ 53    As a final matter, plaintiff disputes only six factual findings from the many pages of factual findings that the administrative law judge made. It is actually telling how few of the factual findings plaintiff disputes. Since we do not rely on these few facts in reaching our decision today, we do not need to address plaintiff's arguments concerning them.

¶ 54                                        CONCLUSION

¶ 55    For the foregoing reasons, we do not find plaintiff's arguments persuasive about either a lack of horizontal integration (between subsidiaries) or a lack of vertical control (between parent and subsidiary). Thus, we must affirm.

¶ 56    Affirmed.